**TEXAS BEEF CATTLE COMPANY, Appellant,**

v.

**Jeff GREEN, Individually and D/B/A J & F CATTLE CO., Appellee.**

No. 07–92–0261–CV.

Court of Appeals of Texas, Amarillo.

Aug. 19, 1993.

Rehearing Denied Sept. 29, 1993.

---

**4.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous- ton, sitting by assignment.

Gibson, Ochsner & Adkins, L.L.P., S. Tom Morris, John Huffaker, David L. LeBas, Amarillo, for appellant.

Sullins, Johnston, Rohrbach, Magers & Herbert, Mike Johnston, Dan Johnston, James G. Gumbert, Houston, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

DODSON, Justice.

Appellant, Texas Beef Cattle Company, appeals a take-nothing judgment rendered by the trial court in favor of appellee Jeff Green on his defensive issues of res judicata and collateral estoppel. We affirm in part, and reverse and remand in part.

■ As pertinent here, Texas Beef brought a cause of action against Jeff Green and others in Hartley County, Texas for conversion and conspiracy to defraud as to two groups of cattle designated in the pleading as Group A and Group B. The Group A cattle consisted of four lots (*i.e.*, lot numbers 4825, 4962, 4972 and 4977) that went to the Caprock Feedyard in Dalhart, Texas. Group B consisted of 247 head of cattle that went to the Caprock Feedyard from the Beck Ranch on December 19, 1988.

In response to Texas Beef's causes of action, in Hartley County, Green plead res judicata and collateral estoppel by virtue of a judgment rendered on 20 May 1988 by the 253rd District Court of Liberty County, Texas in cause number 43,469. In the Liberty County case, Green sued Texas Beef and others for non-payment on eleven lots of cattle. Those cattle were not the subject matter of the Hartley County suit by Texas Beef. However, Texas Beef filed a counterclaim in the Liberty County suit for conversion of the 247 head of cattle (*i.e.*, the Group B cattle) which were a part of the subject matter of the Hartley County suit.

In the Hartley County action, the trial court ordered a separate trial on Green's defense issues of res judicata and collateral estoppel. Those issues were tried to a jury, and the trial court concluded that the jury verdict was against Texas Beef. After the judgment in the Liberty County suit was affirmed on appeal, the trial court rendered judgment in the Hartley County suit in favor of Green and denied Texas Beef's claims as to the Group A cattle and the Group B cattle.

By its first point of error, Texas Beef contends the trial court erred by denying its claims against Green on the Group B cattle because res judicata and collateral estoppel do not bar Texas Beef's claims. However, this contention was made in the trial court and this Court before the Texas Supreme Court's decision in *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex.1992). In its post submission supplemental brief, Texas Beef concedes that if *Barr* applies to this case, then Texas Beef's claims against Green on the Group B cattle are barred by res judicata. In that regard, we must conclude that *Barr* applies to this case, *see, Landoll Corp. v. Morris,* 842 S.W.2d 277 (Tex.1992), and agree that Texas Beef's claims against Green on the Group B cattle are barred by res judicata. The appellant's first point of error is overruled.

By its second point of error, Texas Beef contends the trial court erred by rendering judgment denying its conspiracy claim against Green as to the Group A cattle because those cattle were not involved in the

Liberty County suit, and neither res judicata nor collateral estoppel bars Texas Beef's claims to those cattle. We agree.

■ The doctrine of res judicata is divisible into two principal categories: (1) claim preclusion (also known as res judicata), and (2) issue preclusion (also known as collateral estoppel). *Barr v. Resolution Trust Corp.*, 837 S.W.2d at 628. In *Barr*, the Court stated "[w]e reaffirm the 'transaction' approach to res judicata." The Court further acknowledged that the Restatement of the Law of Judgments (Second), §§ 24(1) and 24(2), takes the transaction approach to claim preclusion and quoted with approval from the restatement as follows:

> The Restatement of Judgments also takes *the transactional approach to claims preclusion.* It provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. Restatement of Judgments § 24(1). A *'transaction' under the Restatement is not equivalent to a sequence of events,* however; *the determination is to be made pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin,* or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.' Id.* § 24(2). (emphasis added)

*Barr v. Resolution Trust Corp.*, 837 S.W.2d at 631. Under the restatement a claim is equated to a transaction. Restatement (Second) of Judgments § 24 reporter's note at 206 (1980). A mere sequence of events is not equivalent to a transaction. What constitutes a transaction is determined pragmatically by giving weight to such matters as whether the facts are related in time, space, origin, or motivation, whether the facts form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties expectations or business understanding or usage.

■ As stated in the comments under the restatement, "[t]he transaction is the basis of the litigative unit or entity *which may not be split."* Restatement (Second) of Judgments § 24 cmt. a (1980) (emphasis added). A party may join multiple transactions into one lawsuit without fear of claim preclusion as to other separate and distinct transactions. Restatement (Second) of Judgments § 24 cmt. h (1980). However, a party may not split a single transaction into multiple lawsuits without violating res judicata claim preclusion. *Id.* In essence, a party may join or split multiple transactions which are separate and distinct; but, a party may not split a separate and distinct (*i.e.*, single) transaction into multiple lawsuits.

In this instance, we are persuaded that the Group A cattle, the Group B cattle, and the other cattle constitute separate and distinct transactions. Accordingly, we conclude that Texas Beef's cross-action in the Liberty County case for the Group B cattle did not preclude its action in Hartley County for the Group A cattle. The Group A cattle and the Group B cattle are separate and distinct transactions. In that regard, the cause of action concerning the Group A cattle arose between October and November of 1988. The Group B transaction, however, originated in December of 1988. Also, the transactions were separate purchases of different lots of cattle. As we noted earlier, the Group A cattle were given lot numbers 4825, 4962, 4972, and 4977. The Group B cattle, however, were identified by lot numbers 4984 and 4985. Even though the two separate transactions involved essentially the same parties and subject matter (*i.e.*, cattle), these transactions are separate and distinct, because they are based on separate and distinct actions of the parties. We also note that in its cross-action pleadings in the Liberty County action, Texas Beef mentioned only the Group B cattle and made no direct reference to the Group A cattle. Therefore, we conclude that Green's res judicata defense fails as to the Group A cattle.

■ We further conclude that collateral estoppel does not preclude Texas Beef's Hartley County action as to the Group A cattle. The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Getty Oil v. Insurance Co. of N. America*, 845 S.W.2d 794, 801

(Tex.1992). In essence, collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action. *Id.* at 802. In that regard, the Liberty County litigation did not touch upon the alleged conspiracy between Green and Florence. In fact, neither the court's charge nor the court's judgment passed on or spoke to a conspiracy allegation. Therefore, it cannot be said that conspiracy was an ultimate fact issue in the Liberty County litigation that was actually litigated and essential to the Liberty County judgment. Consequently, we sustain appellant's second point of error.

Accordingly, we affirm the trial court's judgment as to the Group B cattle; however, we reverse the trial court's judgment as to the Group A cattle, sever that cause of action and remand the severed action to the trial court for a trial on the merits.