**TEXAS BEEF CATTLE COMPANY
et al., Petitioners**

v.

**Jeff GREEN, Individually and d/b/a J &
F Cattle Company, Respondent.**

No. 94–1004.

Supreme Court of Texas.

Argued Sept. 19, 1995.

Decided April 25, 1996.

See also, 860 S.W.2d 722; 862 S.W.2d
812.

P. Michael Jung, Dallas, for petitioners.

Bill Daniel, Mike B. Johnston, and James G. Gumbert, Houston, for respondent.

ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH, SPECTOR, OWEN, BAKER, and ABBOTT, Justices, join.

Texas Beef Cattle Company's motion for rehearing is granted in part and overruled in part. Jeff Green's motion for rehearing is overruled. We withdraw our opinion and judgment of January 11, 1996, and substitute the following opinion.

This malicious prosecution and tortious interference with contract case is the culmination of three lawsuits filed in two counties arising out of competing claims to several hundred head of cattle. We address three

main issues: first, whether a civil case upon which a malicious prosecution suit is predicated has "terminated" in favor of a plaintiff before appeals of the underlying case have been exhausted; second, whether the "special injury" requirement for damages has been satisfied in this case; and third, whether actual malice or legal malice is the relevant inquiry in a justification defense to a claim of tortious interference with contract.

We hold that an underlying civil claim does not terminate in favor of the plaintiff in a malicious prosecution case until the appeals process has been exhausted, and that the special injury threshold for damages in such cases requires an interference with the plaintiff's person or property. We also hold that a jury finding that interference is legally justified is not nullified by a finding of actual malice. Accordingly, we reverse the judgment of the court of appeals and render judgment for W.H. O'Brien, the managing partner of Texas Beef Cattle Company (Texas Beef), and Texas Beef on the malicious prosecution claim, and render judgment for O'Brien on the tortious interference with contract claim.

The facts of this case are convoluted. In search of a buyer and at the behest of Doug Florence, a cattle stocker for and joint venturer with Texas Beef, Jeff Green shipped 253 head of cattle to the Beck Ranch, located in the Texas Panhandle. During negotiations with O'Brien, Green offered to sell these cattle to Texas Beef. O'Brien declined, saying that the price was too high.

Florence then proposed to Green that he sell the cattle to Cargill Agricultural Credit Corporation. Cargill, however, was only interested in 247 of the 253 head of cattle. Green agreed to the sale and told O'Brien that 247 of the cattle would be relocated to Caprock IV, a feedyard in Dalhart, to close the deal with Cargill. Following this agreement, Florence shipped the cattle to Caprock IV, where they were registered in his name. Cargill subsequently issued a $102,853.65 draft to Green, and Green warranted the buyer's title to the cattle.

Florence later confessed to Texas Beef that he had stolen all or a major portion of Texas Beef's cattle pastured on the Beck Ranch. O'Brien subsequently claimed to Cargill that some or all of the cattle delivered by Florence to Caprock IV belonged to Texas Beef. These were the same 247 head of cattle that Texas Beef had chosen not to buy just weeks before. Cargill responded by relocating the cattle to the Dalhart sale barn for auction, where 233 were sold for $102,000.00. As a result of Texas Beef's and Cargill's competing claims to the sale proceeds, the Dalhart Livestock Auction interpleaded the funds into the registry of the court in Hartley County.

The first lawsuit concerning the contested cattle was filed by Texas Beef in Hartley County. Texas Beef sued Cargill for conversion, and later joined Green and several other parties who claimed title to the cattle that had been in either Florence or Texas Beef's possession. The trial court issued a temporary injunction against Cargill, preventing both its collection of the auction proceeds and the sale of any other cattle located on Caprock IV to which Texas Beef claimed an interest. Cargill cross-claimed against Green on his warranty of title.

Two days later, Green filed suit in Liberty County against Texas Beef, its partners, and Florence. Green alleged nonpayment for several shipments of cattle delivered to Florence and resold by Florence to Texas Beef, and that he was not certain which cattle had been paid for. Texas Beef countersued Green for conversion of the 247 head of cattle delivered to Caprock IV, the identical claim it asserted in the Hartley County case.

The Liberty County suit was tried first, in May of 1989, and resulted in a judgment for Green, including the 247 head of cattle claimed by Texas Beef. This judgment was affirmed by the Beaumont Court of Appeals, and we denied Texas Beef's application for writ of error on June 5, 1991.

Although it lost its counterclaim on the 247 head of cattle in the Liberty County suit, Texas Beef pursued that same claim in Hartley County, along with several other claims that had not been litigated in the Liberty County suit. The trial court ordered a separate trial on Green's affirmative defenses of res judicata and collateral estoppel, which

resulted in a jury finding that Texas Beef's claims to the 247 head of cattle had been finally decided in the Liberty County suit. The Hartley County court ultimately rendered judgment for Green on all claims.

The Amarillo Court of Appeals affirmed that judgment in part and reversed it in part, 860 S.W.2d 722, agreeing that Texas Beef's claims to the 247 head of cattle were barred by res judicata but that its claims to other cattle were not barred. After denying the application for writ of error, this Court overruled the motion for rehearing on March 9, 1994.

Green filed this case in Liberty County on April 3, 1992, ten days after the trial court signed the judgment in the Hartley County case. He alleged that Texas Beef's continuation of the Hartley County suit after it lost the first Liberty County suit tortiously interfered with his contract with Cargill and amounted to malicious prosecution. Following a jury trial, the trial court rendered judgment for Green on both claims. The jury found, in part, that while both Texas Beef and O'Brien were legally justified in interfering with Green's contract with Cargill, O'Brien had interfered maliciously. Malice was defined in the charge as ill will, spite, evil motives, and the purposeful injuring of another. Based on this finding, the trial court disregarded the justification finding for O'Brien. The trial court also rendered judgment for Green on the malicious prosecution claim, even though the underlying Hartley County suit was still on appeal. The Beaumont Court of Appeals affirmed, 883 S.W.2d 415, and we granted Texas Beef and O'Brien's application for writ of error.

## I. *Malicious Prosecution*

■ To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the pro-

ceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *James v. Brown,* 637 S.W.2d 914, 918 (Tex. 1982). The parties dispute the existence of the fifth and sixth elements. We will first address the fifth element of this cause of action, whether at the time Green brought his malicious prosecution suit, the underlying Hartley County case had terminated in his favor. When the trial court rendered judgment in the malicious prosecution case, the appeal of the underlying civil case in Hartley County had not been resolved.[1]

### A. *Termination*

■ Green argues that the Hartley County case terminated in his favor upon entry of the trial court judgment and that an appeal should have no affect on his malicious prosecution claim. Green argues that our holding in *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1 (Tex.1986), supports the court of appeals's determination that the Hartley County trial court judgment terminated the case despite the pendency of the appeal. We disagree.

■ In *Scurlock,* after carefully weighing the alternatives, we held that a judgment is generally final for the purposes of issue and claim preclusion regardless of the taking of an appeal. *Id.* at 6. The principal reason we cited for this rule was the nonsensical alternative of retrying *the same issues between the same parties* in subsequent proceedings with the possibility of inconsistent results. *Id.* We are not persuaded, however, that this rule should be extended to the malicious prosecution context. Although Green's conversion claim was litigated in the first Liberty County suit, and thus precluded the second suit based on the same claim in Hartley County, the malicious prosecution suit did not, strictly speaking, relitigate the claims in those cases. The issues in the malicious prosecution suit are more accurately characterized as being predicated upon Green's success in the Hartley County suit and distinct from the issues tried there. Far from relieving litigants and the judicial system of repeti-

---

1. Green obtained a trial court judgment on the malicious prosecution claim in Liberty County on September 29, 1992; the Amarillo Court of Appeals did not render judgment in the underlying Hartley County case until August 19, 1993. After denying the writ of error, we overruled Texas Beef's motion for rehearing on March 9, 1994.

tive lawsuits with the possibility of inconsistent results, we believe that extension of the *Scurlock* rule to malicious prosecution cases would actually promote repetitive and unnecessary litigation because it would allow the plaintiff to prosecute a claim only to have it rendered meaningless if later all or part of the appeal of the underlying action is decided adversely. *See Moran v. Klatzke,* 140 Ariz. 489, 682 P.2d 1156, 1159 (Ct.App.1984). Thus, our holding today is consistent with the policy underlying *Scurlock:* the prevention of unnecessary litigation.

The finality rule in *Scurlock* merely binds the parties and their privies to the original judgment and promotes judicial economy by forcing a losing party to follow the ordinary appeals process, rather than relitigating adverse fact findings in a new lawsuit. *Scurlock,* 724 S.W.2d at 6. Unlike the *Scurlock* rule, the rule adopted by the court of appeals in this case would immediately expose an unsuccessful plaintiff to tort liability, even though the civil suit supporting the malicious prosecution claim might be reversed on appeal, as happened, at least in part, in this case. In contrast to a rule exposing losing litigants to liability on the basis of a judgment that may be reversed, potential malicious prosecution plaintiffs suffer little additional harm in having to wait until the appeals process has run its course, especially when pre- and post-judgment interest are available to compensate for any losses suffered in the interim. Accordingly, we hold that an underlying civil suit has not terminated in favor of a malicious prosecution plaintiff until the appeals process for that underlying suit has been exhausted.

We note that the rule we adopt today is in accord with the *Restatement:* "If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail." RESTATEMENT (SECOND) OF TORTS § 674 cmt. j (1977). This rule has also been adopted by a majority of those states addressing either the termination issue or the point at which the limitations period commences. *E.g., Tenth Ward Rd. Dist. v. Texas & Pac. Ry.,* 12 F.2d 245, 248 (5th Cir. 1926) (applying Louisiana law); *Smith v.*

*Hurd,* 699 F.Supp. 1433, 1436 (D.Haw.1988) (applying Hawaii law), *aff'd,* 985 F.2d 574, 1993 WL 28366 (9th Cir.1993); *Barrett Mobile Home Transp., Inc. v. McGugin,* 530 So.2d 730, 733 (Ala.1988); *Moran v. Klatzke,* 140 Ariz. 489, 682 P.2d 1156, 1157–58 (Ct. App.1984); *Cazares v. Church of Scientology,* 444 So.2d 442, 447 (Fla.Dist.Ct.App.1983); *Commercial Credit Corp. v. Ensley,* 148 Ind. App. 151, 264 N.E.2d 80, 86 (1970); *Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964, 975 (1994); *Breen v. Shatz,* 267 S.W.2d 942, 943 (Ky.Ct.App.1954); *Parisi v. Michigan Townships Assoc.,* 123 Mich.App. 512, 332 N.W.2d 587, 591 (1983); *Coleman v. Strong,* 105 Okla. 282, 232 P. 378, 379 (1925). Our holding is also consistent with the rule we have applied in determining whether a baseless criminal prosecution has terminated in favor of the accused. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 523 (Tex.1988) ("Even when the termination is indecisive as to the accused's guilt, it is nevertheless favorable if the prosecution cannot be revived."). While one Texas court has favorably mentioned the majority rule in the context of an underlying civil case, the decision rested largely on other grounds. *See Morris v. Hargrove,* 351 S.W.2d 666, 667 (Tex.Civ. App.—Austin 1961, writ ref'd n.r.e.) ("The suit which appellant here claims to have been maliciously prosecuted against him was instituted by appellant and had not terminated in plaintiff's favor but was on appeal when the present suit was brought.").

While our holding on the termination element would ordinarily entitle Texas Beef to a new trial on remand, we now address the special injury element to determine whether Texas Beef may receive further relief.

### B. *The Special Injury Requirement*

The parties also disagree as to whether Green suffered special damages as a result of the Hartley County proceeding. A plaintiff must suffer a special injury before recovering for malicious prosecution of a civil case. It is insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees. The mere *filing* of a lawsuit cannot

satisfy the special injury requirement. *Martin v. Trevino,* 578 S.W.2d 763, 766–69 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). There must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration. *Sharif–Munir–Davidson Dev. Corp. v. Bell,* 788 S.W.2d 427, 430 (Tex. App.—Dallas 1990, writ denied). While this rule may leave a party without a remedy for indirect losses, the countervailing policies supporting this heightened threshold in malicious prosecution cases are compelling and well-established in Texas law. *See Pye v. Cardwell,* 110 Tex. 572, 222 S.W. 153, 153 (1920); *Salado College v. Davis,* 47 Tex. 131, 135–36 (Tex.1877). As the Corpus Christi Court of Appeals has noted,

> The special damage requirement assures good faith litigants access to the judicial system without fear of intimidation by a countersuit for malicious prosecution. The special damage requirement also prevents successful defendants in the initial proceeding from using their favorable judgment as a reason to institute a new suit based on malicious prosecution, resulting in needless and endless vexatious lawsuits.

*Martin,* 578 S.W.2d at 768.

■ But once the special injury hurdle has been cleared, that injury serves as a threshold for recovery of the full range of damages incurred as a result of the malicious litigation. "Once this threshold showing of special damage has been made, the injured party is entitled to recover the damages occasioned by the prosecution." J. HADLEY EDGAR, JR. & JAMES B. SALES, 3 TEXAS TORTS & REMEDIES § 55.11[1], at 55–40 (1995); *see also Louis v. Blalock,* 543 S.W.2d 715, 718–19 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) ("Texas law has long recognized that everyone is liable to be harassed and injured in his property and feelings by unfounded suits, but that this is not an injury for which the one sued can have legal redress, except to visit the costs upon the party suing, *unless there is the wrongful suing out of some process by which property is seized and damage sustained.*") (emphasis added); *Boman v. Gibbs,* 443 S.W.2d 267, 272 (Tex.Civ. App.—Amarillo 1969, writ ref'd n.r.e.) ("[A]n

award of damages for prosecution of civil suits with malice and without probable cause cannot be recovered unless the parties sued suffered some interference by reason of the suits with his person or property."). We must decide whether Green has satisfied this standard.

■ As we have explained above, Green initially shipped 253 head of cattle to the Beck Ranch for sale to Texas Beef. After Texas Beef refused to purchase any of the cattle, Green transferred 247 of the 253 head of cattle to the Caprock IV feedyard for sale to Cargill. Cargill paid Green in full for the 247 head of cattle. After this sale had been completed, the Hartley County trial court issued an injunction at Texas Beef's request. Green asserts that this injunction satisfies the special injury requirement. We disagree.

The record discloses that the trial court in Hartley County granted a temporary injunction against Cargill at the request of Texas Beef on July 20, 1989. The injunction halted future sales of cattle in Cargill's possession on the Caprock IV feedyard, and also ordered that proceeds from Cargill's sale of the 233 head of cattle at auction in Dalhart be placed into the registry of the court. This injunction could not have interfered with Green's person or property because, at the time the trial court issued the injunction, he owned no cattle on Caprock IV. Cargill had already paid Green in full for the 247 head of cattle that Green had shipped to Caprock IV. Although the injunction interfered with Cargill's rights to the 247 head of cattle purchased from Green, this would not constitute an interference with *Green's* person or property.

Green argues on rehearing that the injunction also interfered with the six head of cattle that he delivered to the Beck Ranch but never sold to Cargill. While the record is unclear on this point, both parties unequivocally assert in their briefs on rehearing that the six head of cattle that Cargill declined to purchase were never delivered to the Caprock IV feedyard, but rather remained at the Beck Ranch. Thus, an injunction covering only Cargill's cattle on Caprock IV could not have interfered with any of Green's cattle

on the Beck Ranch. Because Green owned no cattle on Caprock IV at the time of the injunction and because the injunction applied to the 247 head of cattle delivered to Caprock IV and sold to Cargill, but not to any of Green's cattle remaining at the Beck Ranch, we hold that Green did not suffer an interference with his person or property for purposes of his malicious prosecution claim.

■■■■ Even assuming that the Hartley County injunction affected only Cargill and did not interfere with his own cattle, Green would have us expand the concept of special injury to include the incidental effects of an injunction on third parties. Green argues that a malicious prosecution action may be brought not only by the specific target of an injunction, but also by those who are indirectly affected by the injunction when the party seeking the injunction is aware of the effects the injunction will have on others. *See Miller Surfacing Co. v. Bridgers*, 269 S.W. 838, 840 (Tex.Civ.App.—Austin 1924, no writ). Thus, Green argues that Texas Beef's malicious pursuit of the injunction against Cargill constituted an interference with his rights and obligations under his warranty of title to the 247 head of cattle, thereby satisfying the special injury requirement. On the contrary, we hold that forcing Green to defend title to Cargill's cattle cannot be characterized as an interference with Green's property as we have defined such an injury today, and we disapprove of the anomalous holding in *Bridgers* to the extent that it expands the reach of special injury to include the incidental effects of an injunction on those who were not directly targeted by the injunction.

Because Green presented no evidence that the Hartley County litigation caused an interference with his person or property, we render judgment for Texas Beef and O'Brien on Green's malicious prosecution claim.

## II. *Legal Malice and the Justification Defense*

■■■■ To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995). Even if a plaintiff establishes the elements of this cause of action, a defendant may still prevail upon establishing the affirmative defense of justification.

■■■■ Here, the jury found that both Texas Beef and O'Brien were justified in asserting their claim to the cattle in the Hartley County case. But, in O'Brien's case, the jury found that his interference had been motivated by actual malice, which was defined as ill will, spite, evil motives, and purposely injuring another.[2] The trial court determined that this finding of actual malice vitiated any possible legal justification for O'Brien's actions and therefore disregarded the finding of justification for O'Brien, which was affirmed by the court of appeals.

■■■■ However, in *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969), we explained that actual malice is relevant only to the plaintiff's potential recovery of exemplary damages. "Actual malice need not be shown to recover compensatory damages for the tort of interference with an existing contractual relationship.... On the other hand, to support the recovery of punitive damages in such a case, there must be a finding of actual malice: ill-will, spite, evil motive, or purposing the injury of another." *Id.*, at 822; *accord Armendariz v. Mora*, 553 S.W.2d 400, 407 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.) (stating that "actual malice is a necessary element to sustain an award of exemplary damages" for tortious interference). Numerous Texas courts have distinguished actual malice, which triggers recovery of exemplary damages, from legal malice, which negates the justification defense. *See Edwards Transp., Inc. v. Circle S Transp., Inc.*, 856 S.W.2d 783, 789 (Tex. App.—Amarillo 1993, no writ); *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied); *Ryan v.*

---

2. We note that the Texas Legislature has recently redefined malice as it relates to the recovery of exemplary damages in causes accruing after September 1, 1995. Tex.Civ.Prac. & Rem.Code § 41.001(7).

*Laurel,* 809 S.W.2d 258, 261 (Tex.App.—San Antonio 1991, no writ); *State Nat'l Bank v. Farah Mfg. Co.,* 678 S.W.2d 661, 688–89 (Tex.App.—El Paso 1984, writ dism'd by agr.); *Lone Star Steel Co. v. Wahl,* 636 S.W.2d 217, 222 (Tex.App.—Texarkana 1982, no writ); *CF & I Steel Corp. v. Pete Sublett & Co.,* 623 S.W.2d 709, 714–15 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Garza v. Mitchell,* 607 S.W.2d 593, 600 (Tex.Civ.App.—Tyler 1980, no writ); *Light v. Transport Ins. Co.,* 469 S.W.2d 433, 440 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.); *Kingsbery v. Phillips Petroleum Co.,* 315 S.W.2d 561, 576 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.); *Terry v. Zachry,* 272 S.W.2d 157, 159 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.), *disapproved on other grounds by Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Montgomery v. Phillips Petroleum Co.,* 49 S.W.2d 967, 972 (Tex.Civ.App.—Amarillo 1932, writ ref'd); *Tidal Western Oil Corp. v. Shackelford,* 297 S.W. 279, 281 (Tex.Civ.App.—Fort Worth 1927, writ ref'd).

■ As we noted in *Sakowitz, Inc. v. Steck,* the justification defense is based on either the exercise of (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984), *overruled on other grounds by Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). Thus, if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense, *see Steck,* 669 S.W.2d at 107, and the motivation behind assertion of that right is irrelevant. *Cf. Holloway,* 898 S.W.2d at 796 (explaining that standing alone, it is insufficient that the interfering corporate agent " 'dislikes that third party and takes pleasure in the harm caused to him by the advice' " (quoting RESTATEMENT (SECOND) OF TORTS § 772 cmt. c (1979)). Improper motives cannot transform lawful actions into actionable torts. " 'Whatever a man has a legal right to do, he may do with impunity, regardless of motive, and if in exercising his legal right in a legal way damage results to another, no cause of action arises against him because of

a bad motive in exercising the right.' " *Montgomery v. Phillips Petroleum Co.,* 49 S.W.2d 967, 972 (Tex.Civ.App.—Amarillo 1932, writ ref'd) (quoting 1 R.C.L. § 6 at 319).

■ On the other hand, if the defendant cannot establish such a legal right as a matter of law, it may nevertheless prevail on its justification defense if: (1) the trial court determines that the defendant interfered while exercising a colorable right, and (2) the jury finds that, although mistaken, the defendant exercised that colorable legal right in good faith:

> It would be a strange doctrine indeed to hold that a person having a well grounded and justifiable belief of a right in or to property may be held liable in damages because of an assertion of such a right.

*Steck,* 669 S.W.2d at 107 (quoting *Tidal Western Oil Corp. v. Shackelford,* 297 S.W. 279, 281 (Tex.Civ.App.—Fort Worth 1927, writ ref'd)). A jury question is presented only when the court decides that although no legal right to interfere exists, the defendant has nevertheless produced evidence of a good faith, albeit mistaken, belief in a colorable legal right.

In this case, Texas Beef and O'Brien did not establish their right to interfere with Green's contract as a matter of law. Instead, the trial court submitted a jury question asking whether the defendants had asserted their colorable legal claims in good faith. The court instructed the jury that the justification defense protects only "good faith assertions of legal rights" and that a party to or interested in a contract may "interfere with the execution of the contract where there is a bona fide doubt as to his rights under it." The jury answered "yes" for both Texas Beef and O'Brien.

■ Based on these answers, Texas Beef and O'Brien established their affirmative defense of justification and defeated Green's tortious interference claim. Once the jury found that both defendants were justified in interfering with the contract between Green and Cargill, the jury's finding of actual malice became immaterial. "[W]here the defen-

dant has a proper purpose in view, the addition of ill will toward the plaintiff will not defeat his privilege." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 129, at 984 (5th ed. 1984); *see also Marathon Oil Co. v. Sterner,* 745 S.W.2d 420, 423–24 (Tex.App.—Houston [14th Dist.] 1988), *aff'd in part, rev'd in part on other grounds,* 767 S.W.2d 686 (Tex.1989). An actual malice finding might have supported exemplary damages against O'Brien only if the jury had found that he was not justified in interfering with Green's contract.

■ Our conclusion about the immateriality of the jury's finding of actual malice under these circumstances is also supported by the very nature of an affirmative defense, which is one of confession and avoidance. *Sterner,* 767 S.W.2d at 690. An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish "an independent reason why the plaintiff should not recover." 2 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 9:44, at 378 (1992). Inasmuch as the jury's answers established justification, a reason independent of the Green's claims against O'Brien, the trial court should have disregarded the actual malice finding as immaterial. *See C. & R. Transp., Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

■ Green points to *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931 (Tex. 1991), in support of his argument that justification is a qualified privilege that protects only good-faith assertions of valid legal claims. As we have explained, while we believe that good faith is immaterial when the defendant establishes a legal right to act as it did, we find the disposition in *Brady* consistent with our holding today. The Bank in that case had interfered with a contract by persistently claiming a security interest in collateral even after the debt secured by the collateral had been extinguished. *Id.* at 940. There being no clear legal right to interfere in such a manner, the Bank had to present evidence that it had a good-faith belief in at least a colorable right to the collateral. Under those facts, whether the Bank acted in good faith was a jury issue. The jury decided against the Bank on its affirmative defense of justification, finding that it had not asserted a colorable legal right in good faith, and we affirmed part of the judgment of the court of appeals on that basis. *Id.* Conversely, the jury in this case found that both Texas Beef and O'Brien had asserted a colorable legal right in good faith, thus entitling both of them to judgment. The jury finding of good faith in this case, missing in *Brady,* distinguishes the cases.

By clarifying today that actual malice does not vitiate the defense of justification, we disavow good faith as relevant to the justification defense when the defendant establishes its legal right to act as it did. Only when mistaken, but colorable claims of legal rights are asserted is the good faith of the actor legally significant. Only then must the jury determine whether the defendant believed in good faith that it had a colorable legal right.

Because the finding that O'Brien's interference was motivated by actual malice was irrelevant to the defense of justification, we reverse the judgment of the court of appeals and render judgment for O'Brien on the tortious interference claim.

### Conclusion

For the foregoing reasons, we reverse the judgment of the court of appeals and render judgment for O'Brien and Texas Beef on the malicious prosecution claim and for O'Brien on the tortious interference claim. Consequently, Green takes nothing on either cause of action.

GONZALEZ, Justice, dissents.

GONZALEZ, Justice, dissenting.

My dissenting opinion of January 11, 1996 is withdrawn, and the following is substituted in its place.

This dispute over 247 head of cattle began in 1988. It involves W.H. "Bill" O'Brien, and others of Texas Beef Cattle Company (O'Brien), and Jeff Green, a small cattle dealer. There have been three jury trials, and Green has won every time. Two of these juries found that O'Brien had no rights to the cattle in question. In addition, the jury in

the present case found that O'Brien tortiously interfered with Green's rights, engaged in malicious prosecution, and acted with ill will, spite, and evil motives toward Green. The judgments in these cases have been reviewed three times by courts of appeals and twice by our Court. Green has prevailed every time as to the cattle in question. Today, the Court holds that the jury finding that O'Brien acted with actual malice towards Green is "irrelevant," renders judgment for O'Brien on tortious interference, and renders judgment for O'Brien on Green's malicious prosecution claim. For the reasons stated below, I would affirm the judgment of the court of appeals.

*Facts*

In December 1988, Jeff Green was contacted by Doug Florence, a joint-venture partner of and buyer for Texas Beef, who requested that Green ship 253 head of cattle from East Texas to the Beck Ranch, located in the Texas Panhandle, in Hartley County, Texas. Florence wanted to see if Texas Beef would purchase the cattle. Green complied, and the cattle Florence requested were segregated from other cattle when they arrived at the Beck Ranch. Green offered to sell the cattle to Texas Beef, but its managing partner, W.H. "Bill" O'Brien, declined because he felt the price was too high. At Florence's suggestion, Green agreed to sell 247 of the 253 head of cattle to Cargill Agricultural Credit Corporation. Green informed O'Brien that he was relocating this shipment of cattle to the Caprock IV feedyard in Dalhart to close the deal. Cargill paid Green $102,853.65, and Green warranted title to the cattle.

Florence later confessed to Texas Beef that he had stolen a large number of Texas Beef's cattle that were pastured at the Beck Ranch. O'Brien informed Cargill that some or all of the cattle delivered to Caprock IV belonged to Texas Beef, even though he knew that these were the same 247 head he had chosen not to buy a week before. Cargill responded by selling 233 head of the cattle at auction, the proceeds of which were interpleaded into the registry of the Hartley County district court.

In December 1988, Texas Beef filed suit in Hartley County against Cargill for conversion of the cattle. Two days later, Green filed suit in Liberty County against Florence, Texas Beef, and Texas Beef's partners for nonpayment on several other shipments of cattle. Green alleged that he delivered cattle to Florence but was never paid for the cattle or was paid with checks dishonored because of insufficient funds. In this suit, Green asserted that Florence was the agent of Texas Beef and its partners and that they were jointly and severally liable. Texas Beef counterclaimed, contending that it had paid for all cattle received and alleging conversion by Green of the 247 head of cattle, negligent grazing, and wrongful sequestration of other cattle. During the course of the Liberty County proceeding, O'Brien threatened to ruin Green financially by endlessly dragging him into court.

O'Brien made good on his threat by adding Green as a defendant in the Hartley County litigation. In fact, O'Brien and Texas Beef filed pleadings identical to those used in their Liberty County counterclaim. At O'Brien's request, the Hartley County court entered a temporary injunction as to the 247 head of cattle, and Cargill cross-claimed against Green on his warranty of title.

*Liberty County Suit and Appeal*

Green's Liberty County suit was tried first before a jury on theories of joint venture and partnership, agency, promissory estoppel, conversion, fraud, and exemplary damages.[1] Based on favorable jury findings, the East Texas trial court rendered judgment for Green for $258,658.80 in actual damages, $6,372 in incidental damages, prejudgment interest, and $125,000 in attorney's fees. The judgment ordered Texas Beef, O'Brien, and O'Brien's partners to take nothing on their counterclaim. In an unpublished opinion, the court of appeals affirmed the judgment of the trial court. This Court denied Texas Beef's application for writ of error.

*Hartley County Suit and Appeal*

Following the Liberty County judgment, O'Brien and Texas Beef sought to re-litigate

---

1. The cause of action against Florence was sev-    ered from this suit.

issues in their home county that they had lost in Liberty County. Texas Beef restated its allegations of fraud and conspiracy between Green and Florence to convert Texas Beef's cattle. It further sought to quiet title to the 247 head of cattle. As previously noted, Texas Beef's pleadings in this action were identical to those in the Liberty County suit with respect to Green. Texas Beef's attorney refused to enter an agreed plea in abatement in the Hartley County suit pending the outcome of their appeal of the Liberty County judgment and insisted that this case be tried. The trial court denied Green's plea in abatement, plea at bar, motion to dismiss, and motion for summary judgment. However, the Hartley County trial court ordered a separate trial on Green's affirmative defenses of res judicata and collateral estoppel.

If O'Brien hoped for a home-field advantage with a Texas Panhandle jury, it did not materialize. O'Brien lost again. The jury found that Texas Beef's conspiracy claims were asserted, or could have been asserted with reasonable diligence, in the Liberty County case. The jury also found that Texas Beef was afforded a full and fair trial of its claims to ownership and possession of the cattle in question. The trial court rendered judgment for Green.

The court of appeals affirmed the Hartley County judgment in part and reversed in part. *Texas Beef Cattle Co. v. Green*, 860 S.W.2d 722, 725 (Tex.App.—Amarillo 1993, writ denied). It held that the first Liberty County judgment was res judicata as to the "Group B" cattle, the 247 head, but not controlling as to "Group A" cattle, the other cattle in which Green had not asserted a proprietary interest. Thus, for our purposes, Green prevailed in this appeal in all relevant respects.

### Present Suit

Green filed the instant case in Liberty County ten days after the trial court signed the judgment in Hartley County. Green alleged malicious prosecution and tortious interference with contract against Texas Beef and O'Brien based on the pursuit of their Hartley County claims after the original judgment was rendered in Liberty County. The case was tried before a jury, and based on favorable jury findings, the trial court rendered judgment for Green on both claims. O'Brien appealed, and the court of appeals affirmed. 883 S.W.2d 415. It is this appeal that is before us now.

### Malicious Prosecution

Today, the Court reverses a jury verdict in favor of Green because the underlying suit forming the basis of his malicious prosecution claim was still on appeal and because Green failed to show special injury. I do not agree with these holdings because they unnecessarily create new law while ignoring precedent. As discussed below, the underlying litigation has terminated sufficiently to bring a malicious prosecution claim, and Green has shown evidence of special injury.

### Termination

In *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986), this Court held that a trial court judgment is final for purposes of issue and claim preclusion, regardless of whether an appeal is taken, unless the appeal amounts to a trial de novo. I see no reason why this holding should not be applied to underlying judgments in malicious prosecution actions.

Moreover, the Court not only misconstrues *Smithwick,* it mistakenly concludes that the court of appeals' reversal of part of the Hartley County suit, which was the subject of Green's malicious prosecution case, rendered the trial court's termination finding erroneous. However, this conclusion ignores what the court of appeals actually did. The court of appeals affirmed the trial court as to the 247 head of cattle and reversed as to the Group A cattle only. *See Texas Beef,* 860 S.W.2d at 725. Green's malicious prosecution action was based solely on the trial court's decision as to the Group B cattle; thus, the court of appeals did not make a finding adverse to Green germane to his malicious prosecution action, and any error by the trial court on this issue was harmless.

## Special Injury

Before a plaintiff may recover damages for malicious prosecution, he must show that he suffered a special injury in the form of a physical interference with his person or property. *Pye v. Cardwell,* 110 Tex. 572, 222 S.W. 153, 153 (1920). Because I believe Green presented some evidence of special injury, I would affirm the jury finding on this issue.

The record shows that Texas Beef obtained an injunction in Hartley County against Cargill's interest in the 247 head sold to it by Green. Although the Group B cattle were not in Green's possession at the time the injunction was issued, the record shows that Green's bill of sale to Cargill contained a general warranty promising that Green would defend title to the Group B cattle against any person and certifying to the buyer of the cattle and Cargill that there were no liens or security interests as to those cattle. This warranty vested in Green a continuing interest in the 247 head. The injunction sought by and granted to Texas Beef interfered with this interest. Even though the injunction was issued directly against a third party, the interference with Green's property interest is evident and provides some evidence of special injury from which the jury could have made its finding. *See Miller Surfacing Co. v. Bridgers,* 269 S.W. 838, 839 (Tex.Civ.App.—Austin 1924, no writ) (concluding that injunction proceeding against third party, when party seeking injunction knows it will directly affect others, can form basis of malicious prosecution action). Thus, the jury's finding that Green suffered special injury should be affirmed.

## Malice and the Justification Defense

The Court today also reverses and renders on Green's claim against O'Brien for tortious interference with contract. The Court holds that the trial court erred in concluding that the jury's finding that O'Brien acted with malice negated the jury's finding that O'Brien was privileged or justified in inter-

fering with Green's contract. This holding ignores clear precedent requiring good faith to be shown before the defense of justification can protect a defendant's actions.

The elements of a cause of action for tortious interference with contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Holloway v. Skinner,* 898 S.W.2d 793, 795–96 (Tex.1995). If a plaintiff succeeds in proving these elements, the defendant can still prevail if he proves the affirmative defense of justification. This defense can be proved upon a showing that the interference was done "in a bona fide exercise of [the interferer's] rights" or that the interferer "has an equal or superior right in the subject matter to that of the other party." *Murray v. Crest Constr. Inc.,* 900 S.W.2d 342, 344 (Tex.1995). However, this defense "only protects good faith assertions of legal rights." *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991). Thus, the justification privilege is a qualified privilege. In this case, the jury found that O'Brien acted with malice in interfering with Green's contract. The trial court, following the clear language of *Brady,* held that this finding negated the jury finding that O'Brien was justified in his actions.

It is indisputable that Texas courts have required a showing of good faith before holding that a party is justified in interfering with contractual relations. *Holloway,* 898 S.W.2d at 796 n. 3; *Brady,* 811 S.W.2d .at 939–40; *Maxey v. Citizens Nat'l Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex.1974); *American Petrofina, Inc. v. PPG Indus., Inc.,* 679 S.W.2d 740, 758–59 (Tex.App.—Fort Worth 1984, writ dism'd); *Hardin v. Majors,* 246 S.W. 100, 102 (Tex.Civ.App.—Amarillo 1923, no writ). In addition, keeping good faith as part of the justification inquiry is consistent with section 773 of the *Restatement (Second) of Torts* and the law of a large number of other jurisdictions.[2] The Court

---

2. *See, e.g., Waldinger Corp. v. CRS Group Eng'rs, Inc.,* 775 F.2d 781, 790 (7th Cir.1985) (applying Illinois law); *Johnson v. Educational Testing Serv.,* 754 F.2d 20, 26 (1st Cir.) (applying Califor-

nia law), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985); *Northeast Airlines, Inc. v. World Airways, Inc.,* 262 F.Supp. 316, 320 (D.Mass.1966); *Evans v. Swaim,* 245 Ala. 641, 18

cites section 772 of the *Restatement* in support of its position; however, that section relates only to whether an action for intentional interference can be based on the honest advice of a professional adviser and is therefore irrelevant to our inquiry. On the other hand, section 773 is directly applicable. It states:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

RESTATEMENT (SECOND) OF TORTS § 773 (1979). The comments to section 773 reiterate that without good faith, the defense of justification does not apply. *See id.* at cmt. a. The question of how to define good faith, however, remains open.

In *American Petrofina*, the Fort Worth Court of Appeals attempted to define good faith in the context of the justification defense to a tortious interference claim. The court stated that "such complete innocence and perfect good faith might very well be the basis of the justification which constitutes a defense to a claim for tortious interference with a contract." *American Petrofina*, 679 S.W.2d at 759. This definition shows that one's motives in interfering with a contract are germane to the defense of justification.

The Court claims that a requirement of good faith does not change the result in this case because the trial court instructed the jury that O'Brien's assertion of his legal rights must have been done in good faith for it to find that he was justified in his actions. However, this conclusion ignores the fact that the jury also found that O'Brien acted with actual malice, which was defined in the jury instruction as ill will, spite, evil motive, or purposely injuring another. That these contradictory jury findings can possibly be reconciled defies common sense. How can one assert a colorable legal right in good faith while at the same time acting with ill will, spite, evil motives, and with an intent to injure another? It simply cannot be done.

As shown by the facts of this case, O'Brien acted in anything but good faith. As stated earlier, after Green filed the original suit in Liberty County, O'Brien threatened to ruin Green financially by dragging him into court as many times as necessary. O'Brien made good on his threat by filing suit against Green in Hartley County using pleadings identical to the ones he employed in his Liberty County counterclaim. After the Liberty County trial judge rendered a take-nothing judgment on Texas Beef's counterclaims against Green, Texas Beef and O'Brien continued their suit on the identical pleadings in Hartley County. These actions more than support the jury's finding of actual malice on the part of O'Brien, and the trial judge correctly concluded that this finding nullifies the jury's finding of justification.

Moreover, the Court's reliance on our decision in *Clements v. Withers*, 437 S.W.2d 818

So.2d 400, 404 (1944); *McReynolds v. Short,* 115 Ariz. 166, 564 P.2d 389, 394 (Ct.App.1977); *Conway Corp. v. Construction Eng'rs, Inc.,* 300 Ark. 225, 782 S.W.2d 36, 40 (1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Masoni v. Board of Trade of San Francisco,* 119 Cal.App.2d 738, 260 P.2d 205, 208 (Cal. Dist.Ct.App.1953); *Westfield Dev. Co. v. Rifle Inv. Assocs.,* 786 P.2d 1112, 1118 (Colo.1990); *Dunshee v. Standard Oil Co.,* 152 Iowa 618, 132 N.W. 371, 375 (1911); *Dickens v. Snodgrass, Dunlap & Co.,* 255 Kan. 164, 872 P.2d 252, 257 (1994); *National Collegiate Athletic Ass'n v. Hornung,* 754 S.W.2d 855, 859–60 (Ky.1988); *Beane v. McMullen,* 265 Md. 585, 291 A.2d 37, 47 (1972); *Tuttle v. Buck,* 107 Minn. 145, 119 N.W. 946, 948 (1909); *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss.1985); *Huskie v. Griffin,* 75 N.H. 345, 74 A. 595, 598–99 (1909); *Leslie Blau Co. v. Alfieri,* 157 N.J.Super. 173, 384 A.2d 859, 867 (Ct.App. Div.1978); *Williams v. Ashcraft,* 72 N.M. 120, 381 P.2d 55, 56–57 (1963); *Terry v. Dairymen's League Coop. Ass'n,* 2 A.D.2d 494, 157 N.Y.S.2d 71, 78–80 (N.Y.App.Div.1956); *Embree Constr. Group, Inc. v. Rafcor, Inc.,* 330 N.C. 487, 411 S.E.2d 916, 924–25 (1992); *Smith v. Ameriflora 1992, Inc.,* 96 Ohio App.3d 179, 644 N.E.2d 1038, 1044 (1994); *Banaitis v. Mitsubishi Bank, Ltd.,* 129 Or.App. 371, 879 P.2d 1288, 1298–99 (1994); *Ruffing v. 84 Lumber Co.,* 410 Pa.Super. 459, 600 A.2d 545, 549–50 (1991); *West Virginia Transp. Co. v. Standard Oil Co.,* 50 W.Va. 611, 40 S.E. 591, 596 (1901); *Wartensleben v. Willey,* 415 P.2d 613, 614 (Wyo.1966).

(Tex.1969), for the proposition that a finding of "actual malice is relevant *only* to the plaintiff's potential recovery of exemplary damages" in tortious interference cases is incorrect. 921 S.W.2d at 210–11 (emphasis added). In *Clements,* this Court merely explained that actual malice is not a necessary element of a cause of action for tortious interference with contract, but that it is a required showing when a plaintiff seeks to recover punitive damages. *Clements,* 437 S.W.2d at 822. Nowhere in *Clements* did we conclude that actual malice is irrelevant to the justification defense. In fact, in *Clements* this Court never even addressed the justification defense. Thus, our decision in *Clements* does not support the majority's position and is wholly irrelevant to the case before us.

This case illustrates why good faith should play a part in the legal justification defense. Texas Beef had every right to submit its claims for decision—but only once. Filing identical claims after the first suit was resolved against it is, as the jury found, nothing but vexatious, malicious prosecution. Thus, because good faith is an element of the defense of justification, I would hold that the jury's finding that O'Brien acted with actual malice negates the jury's finding of justification.

For the above reasons, I dissent.