# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2014

No. 13-40196

Lyle W. Cayce
Clerk

RIVER CAPITAL ADVISORS OF NORTH CAROLINA, INC.,

Plaintiff-Appellee,

v.

FCS ADVISORS, INC. and BREVET CAPITAL SPECIAL OPPORTUNITIES
MASTER FUND, L.P.

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-471

Before REAVLEY, DAVIS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

I.

The plaintiff broker, River Capital Advisors of North Carolina, Inc.
("River Capital"), was engaged by a prospective borrower, Aruba Energy, LLC
("Aruba"), to assist in obtaining substantial financing for a start-up business
in the oil and gas industry. The defendants-appellants, FCS Advisors, Inc., and
Brevet Capital Special Opportunities Master Fund, L.P. ("Appellants"), agreed

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-40196

to make the loan to Aruba in installments. When Aruba notified Appellants that a significant portion of the proceeds of one of the initial loan installments would be allocated to pay River Capital's brokerage fee, Appellants declined to make the loan and requested that Aruba and River Capital agree to defer nearly the entire brokerage fee until a later date. Aruba and River Capital agreed to do so. Once the remaining portion of the brokerage fee became due, Appellants refused to grant Aruba's borrowing request that would enable Aruba to pay River Capital, because Aruba was in default at the time the request was made. River Capital sued Appellants to recover the fee owed by Aruba on a theory that Appellants tortiously interfered with River Capital's agreement with Aruba. After a bench trial, the district court rendered judgment in favor of River Capital on the grounds that Appellants had granted other borrowing requests by Aruba during that same time period while Aruba was in default. We reverse because the loan agreement between Appellants and Aruba provided Appellants the right to decline the installment loan at issue if Aruba was in default.

## II.

The district court had subject matter jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

## III.

"When reviewing a district court decision after a bench trial, we review factual findings for clear error and conclusions of law *de novo*."[1] We also review mixed questions of law and fact *de novo*.[2] A factual finding is clearly erroneous

---

[1] *United States v. McFerrin*, 570 F.3d 672, 675 (5th Cir. 2009) (citations omitted).

[2] *In re Luhr Bros., Inc.*, 325 F.3d 681, 684 (5th Cir. 2003).

No. 13-40196

when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[3] "Like contract interpretation, tortious interference with contract is a mixed question of law and fact. Conclusions of law are reviewed *de novo*. In contrast, whether the elements of contractual interference have been satisfied is a factual question . . . ."[4]

## IV.

The Appellants raise a number of defenses. We conclude that their justification defense clearly resolves this appeal. Appellants contend that, under Texas law, they were justified in denying Aruba's borrowing request for the loan out of which the Success Fee to River Capital would be paid because Aruba was in default at the time the request was made. Thus, Appellants argue the district court erred in imposing liability on them under a theory of tortious interference with River Capital's contract with Aruba.

"Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person . . . who wrongly induces another contracting party to breach the contract."[5] To establish a claim for tortious interference with contract under Texas law, a plaintiff must prove: (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss.[6] "Even if a plaintiff

---

[3] *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

[4] *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995).

[5] *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995).

[6] *Id.* at 795–96.

No. 13-40196

establishes the elements of [tortious interference], a defendant may still prevail upon establishing the affirmative defense of justification."[7]

Under Texas law, the justification defense is based on the exercise of (1) one's own legal rights, or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken.[8] If the defendant has a legal right to interfere with a contract, then he "has conclusively established the justification defense, and the motivation behind assertion of that right is irrelevant."[9] "[I]n a tortious interference case, a defendant's motivation behind the assertion of a legal right is irrelevant since the right conclusively establishes the justification defense."[10]

The district court concluded that Appellants could not rely upon the justification defense because they "failed to establish that they acted in good faith in exercising a colorable legal right, and, as a result, their privilege/justification defense does not provide an independent basis to bar Plaintiff from the relief sought herein." The court found that Appellants' refusal to fund Aruba's borrowing requests for payment of the Success Fee due to default was inconsistent with its other conduct during that same period. The court characterized the Appellants' conduct as "pick[ing] and choos[ing] which creditors of Aruba would be paid."

We conclude that the district court erred in identifying the relevant legal right exercised by Appellants to deny Aruba's Borrowing Requests. Appellants,

---

[7] *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996).

[8] *Prudential Ins. Co. of Am. v. Fin. Review Servs. Inc.*, 29 S.W.3d 74, 80 (Tex. 2000) (citing *Texas Beef*, 921 S.W.2d at 211).

[9] *Texas Beef*, 921 S.W.2d at 211 (citation omitted).

[10] *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996).

as lender, were entitled to deny borrowing requests if Aruba, the borrower, was in default under the provisions of the Term Loan Agreement.

Section 2 of the Term Loan Agreement provides that Appellants, as lender, had "no obligation to make any Term Loan unless and until the conditions set forth in this Section 2, and the applicable conditions set forth elsewhere in [the] Agreement, including Section 4, have been satisfied . . . ." Section 4.2 of the Agreement, which contains various Conditions Precedent to the funding of a Term Loan, gives Appellants the right to deny a Borrowing Request if Aruba was in default.[11] The fact that Aruba was in default is undisputed. As explained above, the provisions of the Term loan Agreement give Appellants the legal right to deny a borrowing request when the borrower is in default. Thus, Appellants are not required to establish that they acted in good faith, since the assertion of a legal right "conclusively establishe[s] the justification defense."[12] Our inquiry ends there. Appellants were justified under Texas law to deny Aruba's borrowing request, regardless of their motive for doing so.[13] Therefore, Appellants were legally justified in declining to make

---

[11] Section 4.2 provides, in pertinent part:

> 4.2 Additional Conditions Precedent to Term Loans. The agreement of each Lender to make the initial Term Loan on the Closing Date and any other Term Loan on a Borrowing Date is subject to the satisfaction, prior to or concurrently with the making of such Term Loans on such date, of the following conditions precedent:
>
> . . .
>
> (c) No Default. No Default or Event of Default shall have occurred and be continuing on such date or after giving effect to the Term Loans requested to be made on such date.

[12] *Calvillo*, 922 S.W.2d at 929. *See also In re Wright*, 138 F.App'x. 690, 694 (5th Cir. 2005) (unpublished) ("First, we think Texas law, as set forth in *Texas Beef Cattle* and *Calvillo*, . . . recognizes the justification defense regardless of . . . motive.").

[13] We also see no basis to say the lender was in bad faith simply because it made some loans

No. 13-40196

the loan and did not tortiously interfere with River Capital's contract with Aruba.

V.

Accordingly, we reverse the district court and render judgment in favor of Appellants.

REVERSED and RENDERED.

---

and denied others. That is what bankers do. For example, loans necessary for the borrower which is in default to continue operations may well be approved and other loans declined; exercising judgment is required and we should be extremely hesitant to second guess such decisions.