Opinion issued August 31, 2005
     









In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01127-CV




WOLFGANG HIRCZY DE MIÑO, Appellant

V.

VERONICA ALVAREZ CHU, Appellee




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2001-64436




MEMORANDUM OPINION
          Appellant, Wolfgang Hirczy De Miño, challenges a summary judgment
rendered in favor of appellee, Veronica Alvarez Chu. Appearing pro se, De Miño
presents four issues, in which he contends that the trial court erred in the following
respects: by rendering summary judgment in favor of Alvarez Chu, by denying De
Miño injunctive relief requested by summary judgment, by not carrying out the
November 13, 2002 judgment and mandate issued by the Fourteenth Court of
Appeals,


 and by denying De Miño’s motion for sanctions. We affirm.
Background
            De Miño was a nontenured lecturer in political science at the University
of Houston Central Campus during the fall 2000 semester, when Alvarez Chu was
a freshman student in his class. De Miño and Alvarez Chu, both single parents, had
a brief, intimate relationship that began during the semester, lasted approximately six
weeks, and ended before Christmas. According to Alvarez Chu, she chose to end the
relationship because she observed De Miño’s explosive temper and felt pressured by
his demands that they marry, buy a house, have more children together, and live their
lives according to his plans. But De Miño refused to accept that their relationship had
ended and began acting in a manner that Alvarez Chu found increasingly intrusive
and disturbing. As De Miño continued to ignore her rejections, Alvarez Chu became
concerned that he might retaliate by failing her in his class. 
          Alvarez Chu’s pleadings describe escalating incidents of post-breakup contact
by De Miño, which she described as “stalking,” “harassment,” and intrusive pressure
to reestablish their relationship. For example, she claimed that De Miño approached
the Galleria shop where she worked and observed her through the store windows. He
telephoned her and followed her on campus, and eventually approached her at work
with a Christmas gift for her daughter. When Alvarez Chu refused the gift, De Miño
went to her former husband’s residence to present the gift, after determining both the
former husband’s address and that the daughter would be at the residence under the
terms of the possession order pertaining to Alvarez Chu and her former husband. 
Alvarez Chu contends that her former husband refused the gift, refused to accept it
again when De Miño mailed it, and ultimately filed a police report when De Miño
continued to try to present the gift. 
          Alvarez Chu eventually reported De Miño’s conduct to the university’s Office
of Affirmative Action (OAA).


 She met with a university representative, who then
met with De Miño on January 18, 2001. Alvarez Chu did not file a formal complaint
at that point, stating that she wished only to be left alone. The intake form and notes
by the OAA officer indicate that De Miño had previously issued at least two
subpoenas duces tecum to Alvarez Chu to request documents for his own custody
dispute. 
          The OAA officer’s intake form and ensuing notations also show that De Miño
met with the officer and his supervisor, the Executive Director of Affirmative Action,
on January 24, 2001. During that meeting, De Miño acknowledged his relationship
with Alvarez Chu and agreed not to contact her, although he disputed that he stalked
and harassed her. Later that same day, De Miño’s department chair notified him that,
based on conduct that the chair considered “an inappropriate relationship with a
female undergraduate,” De Miño was required, as a condition of his continued
university employment and in addition to general prohibitions against relationships
with students, “not to initiate any further contact” with Alvarez Chu. De Miño
acknowledged these conditions, which included a warning that violation of the terms
of the notice would result in termination of his employment.


 Alvarez Chu’s
pleadings allege that De Miño nevertheless continued to stalk and harass her. 
          It is undisputed that De Miño appeared and was noted as “also present” on May
15, 2001 in the 312th Family District Court at a hearing relating to the terms of a
possession order governing the daughter of Alvarez Chu and her former husband. 
Although De Miño was neither a party to the proceeding nor a witness, the trial court
allowed him to approach the bench, whereupon De Miño announced that all present
were “designated witnesses” for his own custody dispute, which, he claimed, was set
for trial in the next month. When De Miño stated that he needed an updated address
and telephone number for Alvarez Chu, the court instructed him to communicate with
her attorney to obtain that information. De Miño then proceeded to request an “order
of protection,” but did not succeed. 
          In a letter dated that same day, May 15, 2001, De Miño informed the
university’s Executive Director of Affirmative Action that he had obtained
permission from the 312th Family District Court to contact Alvarez Chu. In the letter,
De Miño offered his opinion that the court’s permission to contact Alvarez Chu
superseded the university’s prohibition against contacting her, to which De Miño had
agreed in his department chair’s January 24, 2001 notice, or, alternatively, that the
conditions to which he had agreed violated his civil rights. Citing his lack of tenure
and his resulting lack of job security, De Miño asked that the director not contact
De Miño’s department chair. 
          When Alvarez Chu’s counsel later resisted De Miño’s requests for information,
a series of letters ensued between Alvarez Chu’s counsel and De Miño. These letters
included a May 19, 2001 notice to De Miño requesting that he “cease and desist”
what the letter described as lurking near Alvarez Chu.


 
          De Miño’s nontenured nine-month appointment as a lecturer ended with the
spring 2001 semester. On July 23, 2001, the dean of the university’s college of
liberal arts and sciences notified De Miño that he was being offered a reappointment
for the 2001-2002 school year. De Miño was ultimately instructed not to report for
classes for the fall semester, however, after the university provost learned that De
Miño admitted his relationship with Alvarez Chu when he responded initially to the
OAA’s investigation of her allegations.


 
          Alvarez Chu transferred to the university’s downtown campus for the fall 2001
semester, but soon encountered De Miño there as well. Alvarez Chu told her counsel
that De Miño continued to stalk and intimidate her, both at work and at the downtown
campus, and De Miño wrote to Alvarez Chu again on November 9, 2001. On
November 13, 2001, Alvarez Chu’s counsel sent De Miño a second “cease and desist”
letter. 
          Also on November 13, 2001, Alvarez Chu’s counsel directed a letter to the
president of the university, in which she outlined that De Miño had violated the “no
contact” prohibition, to which he had agreed on January 24, 2001. In the same letter,
Alvarez Chu’s counsel requested the university’s assistance with Alvarez Chu’s
complaints of harassment by De Miño. Counsel provided copies of De Miño’s
November 9, 2001 letter to Alvarez Chu and her attorney’s “cease and desist” reply
of November 13, 2001. On November 19, 2001, in response to Alvarez Chu’s report
that De Miño had followed her on campus, the university’s Assistant Vice-President
for Human Resources and Affirmative Action encouraged Alvarez Chu to file a
complaint with the university police for her “personal safety.” One week later, on
November 27, 2001, Alvarez Chu met with the vice-president, who accompanied her
to the campus police station, where Alvarez Chu filed a complaint alleging that De
Miño had harassed and stalked her. Three days later, on November 30, 2001, De
Miño sued Alvarez Chu.
          De Miño’s suit against Alvarez Chu initially took the form of an intervention
in the case pertaining to her daughter, over which the 312th Family District Court had
continuing and exclusive jurisdiction, where De Miño had appeared on May 15, 2001
to request permission to contact Alvarez Chu and also designated all in attendance as
witnesses in his own custody case. On December 19, 2001, the 312th Family District
Court dismissed De Miño’s intervention from Alvarez Chu’s family-law case.
          Continuing pro se, De Miño refiled his suit against Alvarez Chu in the 312th
Family District Court on December 21, 2001. His allegations included claims that
she tortiously interfered with his nontenured employment relationship with the
university by lodging a retaliatory complaint against him, based on his having
intervened in her family-law case as an “interested party.” He sought injunctive relief
on that claim and also claimed that Alvarez Chu owed him a fiduciary duty as his
“secret paramour” and had breached her promise to marry him. The 312th Family
District Court dismissed the lawsuit and awarded sanctions to Alvarez Chu.


 De
Miño appealed pro se to the Fourteenth Court of Appeals, which sustained his
challenge to the lower court’s having dismissed De Miño’s claims without allowing
him an opportunity to amend. De Miño v. Alvarez, No. 14-02-00173-CV, 2002 WL
31526145 at *1 (Tex. App.—Houston [14th Dist.] Nov. 14, 2002, no pet.) (not
designated for publication).  
          On remand, the 312th court transferred the cause to the trial court, where
Alvarez Chu promptly filed a plea to the jurisdiction and special exceptions, subject
to the plea. Although the Fourteenth Court had sustained De Miño’s contention on
appeal that the trial court had dismissed his claims without allowing him an
opportunity to amend, he disputed any need of further pleading initially, but later
filed two supplemental petitions. The first of these added libel and slander
allegations that amounted to variations of De Miño’s tortious interference claims. 
When the trial court elected to consider Alvarez Chu’s plea to the jurisdiction as a
motion for summary judgment, she filed a supplement to her plea and motion for
traditional, rule 166a(a) summary judgment that also addressed De Miño’s recently
supplemented pleadings. See Tex. R. Civ. P. 166a(a). De Miño filed a response and
also filed a motion seeking traditional summary judgment on his request for
injunctive relief incident to his claim that Alvarez Chu tortiously interfered with this
employment relationship with the university. In addition, De Miño late-filed a
supplemental petition in which he claimed that Alvarez Chu could not assert her
affirmative defenses because she had approached the court “with unclean hands.”
          The trial court’s July 31, 2003 order rendered final summary judgment in favor
of Alvarez Chu and ordered a take-nothing judgment in her favor against De Miño’s
claims, which the trial court dismissed with prejudice.
Standard of Review
          We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we must
indulge every reasonable inference in favor of the nonmovant, take all evidence
favorable to the nonmovant as true, and resolve any doubts in favor of the
nonmovant. Id. A defendant who moves for summary judgment on the plaintiff’s
claims must conclusively disprove at least one element of each of the plaintiff’s
causes of action. Little v. Tex. Dep’t of Criminal Justice, 148 S.W.3d 374, 381 (Tex.
2004). A defendant who moves for summary judgment on an affirmative defense
must establish the defense as a matter of law. Long Distance Int’l Inc. v. Telefonos
de Mexico, 49 S.W.3d 347, 350–51 (Tex. 2001). 
          When, as here, a summary judgment does not specify the grounds on which it
was granted, we will affirm the judgment if any one of the theories advanced in the
motion is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157
(Tex. 2004). We will not consider a ground for reversal that was not expressly
presented to the trial court by written motion, answer, or other response to the motion
for summary judgment. See Tex. R. Civ. P. 166a(c) (“Issues not expressly presented
to the trial court by written motion, answer[,] or other response shall not be
considered on appeal as grounds for reversal.”); City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 676 (Tex.1979). 
No Challenge to Denial of De Miño’s Motion for Summary Judgment
         In his second issue, De Miño contends that the trial court erred by denying his
motion for summary judgment on his claim that Alvarez Chu be permanently enjoined
from tortiously interfering with his employment relationship with the university. 
Without a statutory exception that authorizes an appeal from the denial of a motion
for summary judgment, not applicable here, the denial of a motion for summary
judgment is generally not appealable. See Novak v. Stevens, 596 S.W.2d 848, 849
(Tex. 1980); Tex. Civ. Prac. & Rem. Code Ann. §§ 51.045(5), (6) (Vernon 2005)
(statutory exceptions authorizing interlocutory appeal for denial of motions for
summary judgments based on assertions of governmental immunity by governmental
employee or on assertions of free speech or free press by media defendant). Another
exception applies when both parties file motions for summary judgment and the trial
court denies one party’s motion and grants the opposing party’s motion. In that
instance, the party who has been denied summary judgment may challenge both the
summary judgment rendered and the denial of its own motion for summary judgment. 
Valence Operating Co., 164 S.W.3d at 661. In the true “cross-motion” situation, the
reviewing court considers both parties’ summary judgment evidence, determines all
questions presented, and, if the reviewing court determines that the trial court erred
by rendering summary judgment in favor of the prevailing party, the court may render
the judgment that the trial court should have rendered. See id.
          De Miño invokes the “cross-motion” rule in his second issue.


 When the rule
applies in an appropriate case, the reviewing court may reverse the summary
judgment in favor of the prevailing party and render judgment in favor of the party
who also moved for summary judgment, rather than remand for trial. See id. But, the
“cross-motion” rule applies only when the parties have met certain requirements. 
First, each party must have carried its own summary judgment burden, both as
movant and in response to the other party’s motion, as non-movant. See James v.
Hitchcock Indep. Sch. Dist., 742 S.W.2d 701, 703 (Tex. App.—Houston [1st Dist.]
1987, writ denied). In addition, both parties must ordinarily have sought relief that
would result in a final judgment in their respective motions. CU Lloyd’s v.
A. Feldman, 977 S.W.2d 568, 569 (Tex. 1998); Bowman v. Lumberton Indep. Sch.
Dist., 801 S.W.2d 883, 889 (Tex. 1990). 
          The record before us indicates that Alvarez Chu sought a final, traditional
summary judgment on her defensive theories. De Miño, however, sought only a
partial summary judgment and only injunctive relief, by requesting that Alvarez Chu
be enjoined from interfering with his employment relationship with the university,
and reserved his claims for damages related to Alvarez Chu’s tortious interference
with his employment. Accordingly, De Miño’s limited basis for summary judgment
was not a request for a final determination on the merits of his claims.
          The “cross-motion” standard of review does not apply here for an additional
reason. Specifically, the trial court’s order did not deny De Miño’s motion for
summary judgment or even refer to his motion. By not obtaining a ruling on his
motion, De Miño has not shown that he preserved error. See Tex. R. App. P. 33.1(a)
(requiring ruling by trial court to preserve error); see also Coastal Cement Sand Inc.
v. First Interstate Credit Alliance, Inc., 956 S.W.2d 562, 572 (Tex. App.—Houston
[14th Dist.] 1997, pet. denied); Williams v. Vought, 68 S.W.3d 102, 115 (Tex.
App.—Dallas 2001, no pet.) (holding that failure to obtain ruling on summary
judgment precluded review). The trial court’s order here grants Alvarez Chu’s
motion for summary judgment and renders a final take-nothing judgment in her favor
on De Miño’s claims; there is no ruling on his motion. Although De Miño contends
that the trial court “impliedly” denied his motion for summary judgment, the trial
court must expressly deny a motion for it to be challenged under the “cross-motion”
rule. See Valence Operating Co., 164 S.W.3d at 661. Moreover, De Miño’s motion
for “partial,” and, therefore, interlocutory, summary judgment negates that contention. 
          Under the circumstances presented here, we hold that De Miño may not rely
on the “cross-motion” rule to contend that the trial court denied his motion for
summary judgment or to challenge that allegedly implied ruling. 
          We overrule De Miño’s second issue. 
De Miño’s Challenge to Summary Judgment in Favor of Alvarez Chu
          In his first issue, De Miño contends that the trial court erred by rendering
summary judgment in favor of Alvarez Chu. In seeking a final summary judgment
on De Miño’s claims, Alvarez Chu took the position that all of De Miño’s claims
against her arose from the statements she made to university officials concerning De
Miño’s stalking and harassing behavior. These statements, De Miño contends,
amounted to tortious interference with his employment relationship with the
university and resulted in his not obtaining a renewal of his nontenured faculty
position for the fall 2001 term. Alvarez Chu moved for summary judgment by
contending that De Miño’s claims were barred as a matter of law because she was
absolutely privileged to voice her complaints about De Miño to university officials. 
Alvarez Chu premised her claim of absolute privilege on the following theories, both 
of which, she claimed, rendered her immune from liability for De Miño’s claims: the
quasi-judicial proceedings privilege or, alternatively, the contention that she was
justified in asserting her complaints. She also argued that De Miño’s claims were
time barred, but her primary emphasis in moving for summary judgment was that her
actions were proper and legally protected. In contrast, in opposing summary
judgment, De Miño did not categorically deny Alvarez Chu’s factual allegations,
many of which he conceded, but claimed instead that his actions were innocent or,
alternatively, justified, or that his superior rights controlled. Because the trial court
did not state which of Alvarez Chu’s grounds formed the basis of the summary
judgment rendered, we may affirm the trial court’s ruling if any of the theories that
Alvarez Chu advanced is meritorious. See Joe, 145 S.W.3d at 157. 
A.      Tortious Interference with Employment Contract
          1.       Nature of De Miño’s Claims 
          Texas law protects an employment contract, including a terminable-at-will
contract, from interference by third persons until the contract is terminated. Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989). It is undisputed that Alvarez
Chu asserted her initial complaints to the university when De Miño was employed as
a faculty member, a lecturer in political science, under a one-year nontenured
appointment. Although he disputed that he harassed and stalked Alvarez Chu, it is
undisputed that De Miño admitted his relationship with Alvarez Chu when he
responded to the university’s OAA office investigation, that he agreed, as a condition
of his continued employment, not to contact her thereafter and to avoid relationships
with female students, and that he was not reappointed for the fall 2001 term because
of an inappropriate relationship with a student. De Miño’s allegations of tortious
interference derive entirely from Alvarez Chu’s complaints to the university’s OAA.
          To prevail on his claim of tortious interference with his employment
relationship with the university, De Miño had to plead and prove (1) that his
employment relationship with the university was subject to interference, (2) that
Alvarez Chu committed a willful and intentional act that (3) was the proximate cause
of actual loss or damage to De Miño. See Tex. Beef Cattle Co. v. Green, 921 S.W.2d
203, 210 (Tex. 1996). We assume, without deciding, that De Miño’s pleadings
sufficiently alleged a claim for tortious interference.
          2.       Absolute Defense—Justification
          One theory on which the trial court might have rendered summary judgment
is Alvarez Chu’s contention that she was justified in asserting her complaints as a
matter of law and was therefore absolutely privileged and immune from liability for
tortiously interfering with De Miño’s employment by asserting them. 
          Alvarez Chu would be privileged to interfere with a contract that De Miño had
with the university if she showed either that (1) her interference was the result of her
bona fide exercise of her own legal rights, or (2) her interference was a good-faith
claim to a colorable legal right, even if the right to the claimed legal right ultimately
proved to be mistaken. See id. at 211; VingCard A.S. v. Merrimac Hospitality Sys.,
59 S.W.3d 847, 866 (Tex. App.—Fort Worth 2001, pet. denied). Whether Alvarez
Chu was exercising her legal rights, under the first alternative for asserting
justification, as she contended in moving for summary judgment, is a question of law
for the court, see VingCard A.S., 59 S.W.3d at 866, and therefore appropriate for
resolution by summary judgment. If the summary judgment movant, here Alvarez
Chu, conclusively established that the alleged interference resulted from her
exercising a legal right, whether or not she acted maliciously, she was entitled to
prevail as a matter of law against De Miño’s claims of tortious interference by
establishing the affirmative defense of justification. See Prudential Ins. Co. of Am.
v. Fin. Review Servs., Inc., 29 S.W.3d 74, 80-81 (Tex. 2000); Calvillo v. Gonzalez,
922 S.W.2d 928, 929 (Tex. 1996); see also Sterner, 767 S.W.2d at 689–90
(establishing that justification is affirmative defense on which defendant has burden
of proof; overruling Sakowitz, Inc. v. Steck, 669 S.W.2d 105, 107 (Tex. 1984), which
placed burden of proof to disprove justification on plaintiff); see also Montgomery
v. Kennedy, 669 S.W.2d 309, 310–11 (Tex. 1984) (holding that defendant moving for
summary judgment on affirmative defense has burden to establish defense as matter
of law). 
          Alvarez Chu sought summary judgment on her affirmative defense of
justification based on the university’s policy prohibiting sexual harassment. This
policy states at the outset that harassment on the basis of sex constitutes
discrimination that violates federal law, specifies that conduct constituting sexual
harassment is a criminal offense if committed by a public servant, and further states
that such conduct “most often exploits a relationship between individuals of unequal
power and authority, as, for example, . . . between a student and a teacher.” The
policy lists several, nonexclusive examples of conduct that may constitute sexual
harassment when the conduct “creates an intimidating, hostile, or offensive university
environment.” 
          In addition, Alvarez Chu’s motion for summary judgment negated De Miño’s
previously asserted contention that her complaints to the university did not allege
complaints of sexual harassment. Alvarez Chu first noted, correctly, that De Miño
acknowledged in his own pleadings that Alvarez Chu’s complaint to the university
alleged sexual harassment. In these pleadings, De Miño contended that Alvarez
Chu’s claims that he sexually harassed her were defamatory per se and therefore
required no proof that he was injured by her statements to entitle him to damages. 
See Leyendecker & Assoc., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984).
          Alvarez Chu’s motion for summary judgment also relied on Green v. Adm’rs
of Tulane Educ. Fund, 284 F.3d 642 (5th Cir. 2002), in which a former university
employee asserted Title VII and state-law claims of sexual harassment and retaliation
against Tulane University and a male physician who had been her supervisor. Id. at
650. The essence of the sexual harassment claims was that the physician had
retaliated against Green because she refused to continue their previous sexual
relationship. Id. Tulane challenged Green’s complaint by arguing that it “was not
premised on the fact that she is a woman,” and therefore did not allege harassment
based on sex, but mere “personal animosity” arising out of the failed relationship. Id.
at 656. In summarily rejecting this argument, the court pointed out that, as in this
case, the harassment occurred only after the previous sexual relationship had ended
and concluded that “[t]his fact alone” sufficed to assert a sexual harassment claim. 
Id. at 657. 
          The summary judgment record before us here shows that De Miño’s response
to Alvarez Chu’s motion for summary judgment did not refer directly to her
affirmative defense of justification. In the “Multi-Purpose Affidavit” accompanying
his response, however, De Miño summarily contended that Alvarez Chu’s complaints
did not constitute claims of sexual harassment. We reject that contention because De
Miño’s pleadings acknowledge Alvarez Chu’s complaints as premised on sexual
harassment and for the reasons stated by the United States Court of Appeals for the
Fifth Circuit in Green. 284 F.3d at 656–57. 
          De Miño also contended generally that Alvarez Chu lacked standing to assert
complaints based on off-campus encounters, for example, her claims that he
approached her work premises and attempted to deliver a gift to her daughter, or on
encounters that occurred when she was no longer a student. But, De Miño ignores
that the origin of Alvarez Chu’s complaints was her allegation that he harassed her
when she was a student, and that he agreed, as a condition of continued employment
with the university after Alvarez Chu’s first complaint, not to contact her thereafter. 
De Miño also contended, again only generally and without citing any authority, that
Alvarez Chu waived any right she may have had to reveal their relationship in
asserting her harassment complaint because they had each agreed to keep their
relationship a secret. After reviewing the summary judgment record, we conclude that Alvarez Chu
conclusively established, under the first alternative for proving the affirmative
defense of justification, that, in stating her complaints concerning De Miño to the
university officials, Alvarez was exercising the legal rights accorded her under the
university’s sexual harassment policy and therefore established her affirmative
defense of justification as a matter of law. See Prudential Ins. Co., 29 S.W.3d at
80–81; VingCard A.S., 59 S.W.3d at 866. We further conclude that De Miño failed
to defeat that showing in responding to Alvarez Chu’s motion for summary judgment. 
B.      De Miño’s Late-Asserted Objection—“Unclean Hands”
          The trial court set a June 5, 2003 deadline for filing any amended pleadings and
July 3 and July 21, 2003, respectively, as deadlines for filing motions for summary
judgment and responses to those motions, which were to be submitted to the trial
court on July 28, 2003. De Miño filed a supplemental petition on July 21, 2003,
seven days before the summary judgment hearing date of July 28, 2003. Because the
record does not reflect that leave to file the supplemental petition was denied, we
presume that the trial court granted leave to file the supplemental petition and
considered the allegations in that pleading in rendering summary judgment. See Sosa
v. Central Power & Light, 909 S.W.2d 893, 895 (Tex. 1995); Goswami v. Metro. Sav.
& Loan Ass’n, 751 S.W.2d 487, 490 (Tex. 1988); Tex. R. Civ. P. 63.



          De Miño’s late-filed petition supplemented his previous objections to the
affirmative defenses that Alvarez Chu had previously asserted by claiming that she
was equitably estopped from asserting them because she approached the court “with
unclean hands.” The essence of De Miño’s assertion was that Alvarez Chu had
agreed, in writing, to marry De Miño and had also ratified that agreement. 
          The equitable doctrine of “unclean hands” requires that a party seeking equity
must come to court with clean hands. In re EGL, 89 S.W.3d 761, 766 (Tex.
App.—Houston [1st Dist.] 2002) (orig. proceeding). As asserted by De Miño here,
the “unclean hands” doctrine was an affirmative defense on which De Miño had the
burden of proof. See Adams v. First Nat’l Bank, 154 S.W.3d 859, 876 (Tex.
App.—Dallas 2005, no pet.); see generally Long Distance Int’l Inc., 49 S.W.3d at
350–51 (applying general rule that party relying on affirmative defense must
conclusively establish defense in summary judgment context). 
          Although De Miño included arguments premised on the doctrine of unclean
hands in his response to Alvarez Chu’s motion for summary judgment, he made no
attempt to prove the defense as a matter of law. Instead, he claimed that he had raised
fact issues on the defense through the conclusory assertions in his “all purpose
affidavit.” In the affidavit, however, De Miño stated only that Alvarez Chu had
agreed, in writing, to marry him, and that she had not disproved that claim. 
          In responding to Alvarez Chu’s motion for summary judgment, however, De
Miño offered no authority to the trial court to demonstrate that De Miño’s mere
allegation that Alvarez Chu had agreed to marry him, which she had previously
denied in her own affidavit, created a material fact issue that would have defeated her
having conclusively established, as a matter of law, that she was absolutely justified
when she complained to the university about De Miño’s harassment, because the
resulting interference with his employment resulted from her exercising her legal
rights, as recognized by the Texas Beef Cattle Company and VingCard A.S.
precedents. De Miño has likewise failed to substantiate his contention to this Court,
and we know of no authority that supports his contention. 
          We therefore conclude that De Miño’s late-asserted claim, that Alvarez Chu
approached the court with “unclean hands,” did not defeat her having established her
right to prevail by summary judgment on her claim of justification as a matter of law. 
          We overrule De Miño’s first issue.
          In his third issue, De Miño contends that the trial court erred by not carrying
out the November 13, 2002 judgment and mandate of the Fourteenth Court of
Appeals in De Miño v. Alvarez, No. 14-02-00173-CV, 2002 WL 31526145 at *1
(Tex. App.—Houston [14th Dist.] Nov. 14, 2002, no pet.) (not designated for
publication), which awarded costs on appeal to De Miño after reversing an earlier
judgment dismissing his claims, because he had not been afforded an opportunity to
amend his pleadings. Rule 129 of the Rules of Civil Procedure states the procedure
for recovery of costs. Tex. R. Civ. P. 129; see generally Holloway v. Butler, 828
S.W.2d 810, 812–13 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (upholding
constitutionality of statute permitting trial courts to set court reporter’s fees and
overruling challenge to costs awarded). In seeking the recovery of the costs awarded
by the Fourteenth Court’s judgment and mandate, De Miño merely sought
enforcement directly from the trial court. Because nothing in the record shows that
De Miño exercised the preliminary procedures required by rule 129, the trial court did
not err by not ruling on De Miño’s motion or by implicitly, and properly, denying that
motion by awarding costs to Alvarez Chu, as the prevailing party. See Tex. R. Civ.
P. 131 (authorizing awarding costs to prevailing party).
          We overrule De Miño’s third issue. 
          De Miño’s fourth issue challenges the trial court’s refusal to award sanctions
in De Miño’s favor. He first contends that the trial court was required to award
sanctions against Alvarez Chu’s counsel because the Fourteenth Court of Appeals 
had previously ruled that “the denial of sanctions constituted error.” Our sister
court’s opinion does not so hold, but states instead that De Miño had not
demonstrated in his brief that he should have been awarded sanctions. De Miño v.
Alvarez, 2002 WL 31526145 at *1 n.8. De Miño further challenges the trial court’s
failure to award him sanctions pursuant to Tex. R. Civ. P. 13, because Alvarez Chu
asserted baseless and groundless affirmative defenses and defamed him per se by
referring to her complaints of sexual harassment in her pleadings. We review a rule
13 ruling for abuse of discretion. Koslow’s v. Mackie, 796 S.W.2d 700, 704 (Tex.
1990). Rule 13 expressly requires that trial courts presume that parties have filed
their pleadings in good faith. Tex. R. Civ. P. 13. Accordingly, De Miño had the
burden to overcome this presumption in seeking sanctions. GTE Communications
Sys. Corp. v. Tanner, 856 S.W.2d 725, 731 (Tex. 1993). De Miño has not asserted
any authority to support his claim that asserting a defamatory per se claim warrants
rule 13 sanctions and we know of none. Similarly, nothing in the summary judgment
record demonstrates that De Miño overcame the presumption, mandated by rule 13,
that Alvarez Chu asserted her defensive theories in good faith. 
          We overrule De Miño’s fourth issue.
 
 

Conclusion
          We affirm the judgment of the trial court.
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Alcala, and Higley.