In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00028-CR
______________________________


ERNEST RAYMOND ROJAS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Criminal Court at Law #4
Harris County, Texas
Trial Court No. 1272121


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Ernest


 Raymond Rojas was convicted by a jury for the misdemeanor offense of
assault,


 by causing bodily injury to his pregnant girlfriend, Zulma Catalan. The trial court
assessed punishment in accordance with the parties' agreed recommendation at 250 days'
confinement in jail and sentenced Rojas accordingly. Rojas appeals, alleging in two
separate points of error the evidence is legally and factually insufficient to show bodily
injury. "Bodily injury" means physical pain, illness, or any impairment of physical
condition.


 
Standards of Review
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we must evaluate all of the evidence in the record, both direct and circumstantial,
whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999). 
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met.
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). If the evidence is factually insufficient, then
we must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996).
Legal Sufficiency
          The evidence at trial showed that, in the early morning of August 30, 2004, around
7:00, Catalan went from her house to the house next door where Juana Rayo and Maria
Gloria Rayo lived. Juana


 is Catalan's niece, and Maria is Juana's mother. When Catalan
entered the house, she was covering her face with her hand and went to the bathroom. 
Juana heard water running in the bathroom, and when Catalan exited, she still covered her
face with her hand, and went to the front porch. Juana saw Rojas standing in front of the
porch but outside a fence, acting angry and threatening Catalan, saying, "[O]nce I get in
there, it's your ass, . . . ." 
          Juana also saw Catalan talking on a cell phone while she was on the front porch. 
An audio tape recording of Catalan's 9-1-1 telephone call was played to the jury. The trial
court noted that the recording reflected that Catalan had stated to the operator, "He hit
me." After Catalan talked on the cell phone, Juana saw Rojas leave the premises in his
truck. After he left, Catalan returned to her house. Rojas later returned and entered the
house where Catalan was located. Juana then heard loud "pounding" noises coming from
that house.  
          The police responded to the 9-1-1 telephone call around 7:20 a.m. on the same date
and went to the house where Catalan was located. When they could not get anyone to
answer the door, they summoned a SWAT team. Catalan exited the house just as the
SWAT team was preparing to enter. Catalan appeared frightened and looked over her
shoulder several times as she exited the house. Maria testified that Catalan's face was
"kind of bulky" and that there was blood on her mouth and on her blouse. Danny Lynn
Hicks, one of the responding officers, testified Catalan had red marks on her neck and
upper chest area "that appeared to be some type of scratches." Another officer, Janet Gill,
testified that Catalan "had swelling on the right side of her face" and that she "had a
swollen upper lip." Gill further testified that these injuries appeared fresh and were the kind
of injuries that would cause pain. Maria overheard Catalan explain to Gill how she received
those injuries, and Maria quoted Catalan as saying, "He hit me. He hit me." Maria
assumed Catalan was referring to Rojas. 
          Gill also described Catalan as upset, crying, shaking, and "very, very frightened." 
Catalan told Gill that Rojas came to her house intoxicated and was angry over some of her
friends calling her and wanting her to go out with them. She said Rojas left, but later
started calling her, telling her that he was lost and wanted her to come get him. Catalan
told Gill that Rojas arrived at her house again around 7:00 a.m., forced his way in, and was
angry about her not picking him up. She said he slapped her about the face and head. 
When she tried to get away from him, he grabbed her hair and her shirt and threw her to
the ground. She stated that, when she was finally able to get away from him, she ran next
door, locking the fence gate behind her, and called the police. She told Gill that Rojas
followed her next door, but stopped in front of the fence gate, where he cursed and yelled
at her. Catalan said that Rojas then "disappeared" and she went back to her home. 
           The officers entered the residence where they observed "some type of a fight or
scuffle had occurred." They also found Rojas in a bedroom, intoxicated, and with no
physical injuries to his person. He was taken into custody. 
          In evaluating this evidence—both the direct and the circumstantial—in the light most
favorable to the verdict, we hold it is sufficient for the jury to have found beyond a
reasonable doubt that Rojas caused bodily injury to Catalan. Rojas' legal sufficiency point
of error is overruled.
Factual Sufficiency
          Catalan testified on behalf of Rojas. She said that, on the occasion in question, she
and Rojas had been fighting over the use of the telephone and that she had been struck
with the telephone by accident. She denied Rojas had struck her with his fist. Catalan also
denied she had any injuries to her face, explaining that the redness to her face was due
to her crying. Maria testified that, even though Catalan was sobbing when she exited the
house, Catalan said she was okay. Catalan told Gill that she did not want to file charges
against Rojas and that she did not want him to go to jail.
          Viewing all the evidence in a neutral light, we conclude the evidence supporting the
jury's finding that Rojas caused bodily injury to Catalan is not too weak to support the
finding of guilt beyond a reasonable doubt. We further hold that the evidence contrary to
that finding is not so strong that the beyond-a-reasonable-doubt standard could not have
been met. Accordingly, we overrule Rojas' factual sufficiency challenge.
Conclusion
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      August 19, 2005
Date Decided:         August 31, 2005

Do Not Publish



ing in the trial court, and reiterated in her affidavit, that the motion to dismiss was placed in
the United States mail March 22, 2004, postage prepaid. Likewise, the certificate of service on the
motion to dismiss states the motion was sent to Alvarez's attorney via certified mail and to three
other attorneys by regular mail. In the absence of a legible postmark, an attorney's uncontroverted
affidavit establishing the date of mailing may be sufficient evidence of the mailing date and,
therefore, of the filing date. Lofton v. Allstate Ins. Co., 895 S.W.2d 693, 693–94 (Tex. 1995); see
Arnold v. Shuck, 24 S.W.3d 470, 472 (Tex. App.—Texarkana 2000, pet. denied) (testimony of legal
assistant sufficient as evidence of timely mailing); Hodges v. State, 539 S.W.2d 394, 396 (Tex. Civ.
App.—Austin 1976, no writ) (counsel's sworn motion, uncontroverted by opposing party, sufficient
to demonstrate compliance with Rule 5 where envelope not produced).
            Alvarez claims that the file mark on Thomas' motion to dismiss (March 25, 2004) should
control in determining the date of filing. But there are multiple forms of prima facie evidence by
which a court may determine the filing date under the "mailbox rule." Thomas' certificate of service
and his attorney's affidavit are both prima facie evidence of the date of mailing. Alvarez offered
nothing to controvert either the certificate of service or the attorney's affidavit. 
            Alvarez directs us to Texas Beef Cattle Co. v. Green, 862 S.W.2d 812 (Tex.
App.—Beaumont 1993), rev'd on other grounds, 921 S.W.2d 203 (Tex. 1996), as authority that an
attorney's affidavit and a postage meter stamp fail to overcome the presumption of date of mailing
established by a United States Postal Service postmark. Id. at 814. While that is the holding there,
such a comparison is inapposite here, where there is no United States postmark to be considered.
            True, Rule 5 provides, as Alvarez argues, that a United States postmark is prima facie
evidence of the date of mailing. But the rules and caselaw provide for other forms of prima facie
evidence which may be considered. See Tex. R. Civ. P. 21a. An attorney's certificate of service
constitutes prima facie evidence of service. Meek v. Bishop Peterson & Sharp, P.C., 919 S.W.2d
805, 809 (Tex. App.—Houston [14th Dist.] 1996, writ denied); Havens v. Ayers, 886 S.W.2d 506,
509 (Tex. App.—Houston [1st Dist.] 1994, no writ).
            Thomas provided prima facie evidence of having placed the motion to dismiss in the United
States mail, postage prepaid, by way of the certificate of service and the attorney's affidavit. Alvarez
offered no evidence controverting the affidavit of Thomas' counsel or the certificate of service
attached to the motion to dismiss. The trial court had ample evidence to find that Thomas' motion
for dismissal was mailed March 22, 2004. If Rule 5 applied, as was argued by the parties, the motion
would have been filed March 22, before the nonsuit.
            Article 4590i is explicit. If a plaintiff fails to provide the required expert report within 180
days of the filing of his or her suit, on motion by the defendant, a trial court shall dismiss with
prejudice the plaintiff's cause of action. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01. Once a case
matures as did this one, without the filing of a qualifying expert report, if thereafter the defendant's
motion to dismiss is filed before the plaintiff's nonsuit, the trial court must dismiss with prejudice
the plaintiff's suit. Am. Transitional Care Ctr. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001).
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          May 24, 2005
Date Decided:             August 26, 2005