# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-11-00670-CV
---

**David Michael Kelly, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-FM-09-000978, HONORABLE TIM SULAK, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

David Michael Kelly appeals the denial of his motion to modify a decree terminating parental rights to four minor children who are Kelly's grandchildren. The decree, based largely on a mediated settlement agreement ("MSA"), named the Department of Family and Protective Services as the children's sole managing conservator. Kelly requested that the trial court modify the decree by substituting himself for the Department as sole managing conservator. After a hearing, the jury found that the circumstances of Kelly and the children had not changed substantially and materially between the entry of the MSA and the time of trial. The trial court denied the motion to modify. On appeal, Kelly contends that the jury's finding that his and the children's circumstances did not substantially and materially change is not supported by factually sufficient evidence. We will affirm the denial of the motion to modify.

**BACKGROUND**

Kelly's daughter, Victoria, had four children by two fathers—the first with John and three younger children with Joshua. The Department removed all four children from Victoria and Joshua based on allegations of neglect and abuse and placed the children with Kelly's sister, Rhonda, who filed this suit seeking to be named the children's temporary sole managing conservator. When Rhonda later surrendered the children to the Department claiming that she could not support the children adequately, they were placed with foster parents. Kelly, the children's grandfather, at first declined to be considered as a conservator but declared his interest in late 2010 when it became apparent that the children were not going to be placed with his daughter or his sister. A home study was ordered to gauge Kelly's ability to care for the four children.

Before the home study on Kelly was completed, the Department held a mediation concerning the children on January 27, 2011. Kelly, though not a party to the suit, attended the mediation along with Victoria, Joshua's attorney, Rhonda, and representatives from the Department. Victoria and Joshua (through his attorney) signed the MSA by which they agreed to relinquish their parental rights. The parties agreed that the court should consider Kelly, Rhonda, and the foster parents as potential adoptive placements for the children. Kelly did not sign the agreement but intervened in this suit before the placement hearing. The trial court struck his petition.

At the February 16, 2011 hearing, the court terminated Victoria's and Joshua's parental rights based on their affidavits of relinquishment and the children's best interests, and terminated John's rights based on his constructive abandonment of his child and her best interest. Despite the home study's recommendation that the children be placed with Kelly, the trial court followed the recommendations of the Department, the children's attorney ad litem, and the court-

appointed special advocate. The trial court essentially maintained the status quo by keeping the Department as the children's sole managing conservator and the children in their foster placement. The trial court signed a decree memorializing these decisions on April 4, 2011. On April 5, 2011, Kelly filed a motion to modify the decree.

The Department and CASA did not allow Kelly to visit the children after the February hearing. The Department also decided not to tell the children that their parents' rights had been terminated until the children's placement was finally determined. Kelly had been separated from his wife for years, but filed for divorce in April 2011 so that he might adopt the children on his own. On June 1, 2011, the trial court ordered the Department to have the children's therapist supervise a visit between Kelly and the children to determine whether further visits were in the children's best interest. After their July 23, 2011 visit, the therapist believed that the children were happy to see Kelly and greeted him warmly. The therapist had no concerns about Kelly's interaction with the children and recommended more visits to assess better how the children interacted with Kelly. He recommended supervised visits, however, because of lingering concerns that Kelly might let Victoria interact with the children, which could disrupt their lives. The therapist's concerns grew when he learned that someone had fired a shotgun blast through Kelly's door when Victoria was visiting him. Kelly subsequently visited with the girls at the Department's office.

After a three-day hearing in late September 2011, a jury made a single finding that the circumstances of Kelly, the children, and the Department had not changed materially and substantially since the mediated settlement conference. Based on that finding, the court denied the motion to modify.

## STANDARD OF REVIEW

In order to obtain a modification of an order establishing conservatorship based on an MSA, the movant must show that the circumstances of the child, the conservator, or other party affected by the order have materially and substantially changed since the date MSA was signed. Tex. Fam. Code Ann. § 156.101(a) (West Supp. 2012). Because the statute does not state a standard of proof, changed circumstances must be proved by a preponderance of the evidence. *See id*. § 105.005 (West 2008); *see also Davis v. Duke*, 537 S.W.2d 519, 521 (Tex. Civ. App.—Austin 1976, no writ). There is no set list of changed circumstances that permit modification of the decree, and the determination is fact-specific. *Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied). A non-comprehensive list of material changes in circumstances, as described by other courts, have included (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody. *In re A.L.E.*, 279 S.W.3d 424, 428-29 (Tex. App.—Houston [14th Dist.] 2009, no pet.). None of these circumstances is present in the evidence here.

In determining a factual sufficiency question, we weigh and consider all the evidence in the record. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). When, as here, an appellant attacks the factual sufficiency of an adverse finding on an issue for which he had the burden of proof, the appellant must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

**DISCUSSION**

Kelly asserts that the following circumstances changed materially and substantially after January 27, 2011 when the MSA was signed: (1) all parental rights were terminated, including John's, which were not mentioned in the agreement; (2) the children were permanently placed with the foster parents; (3) Kelly intervened in the suit, but his intervention was struck; (4) the home study recommended that the children be placed with him; (5) the children began acting disruptively and one threatened suicide; (6) Kelly filed for divorce to enable him to adopt the children; (7) the frequency of his visits with the children was reduced; and (8) a CPS supervisor testified at the placement hearing in a way that might have led the court to believe that he had a felony conviction, when it was just an arrest for a felony. The Department contends that these changes were contemplated or anticipated at the time of the MSA or did not constitute a change in the circumstances of Kelly or the children.

Kelly argues that the Department waived its right to assert that the changes were anticipated or contemplated because that is an affirmative defense to his assertion of changes, and should have been pleaded at the trial court under Texas Rule of Civil Procedure 94. He contends that the Department's argument is an affirmative defense because it argues for an independent reason that he should not prevail even if he proves that substantial and material changes have occurred, citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996). We find no express statutory, rule-based, or precedential authority supporting Kelly's argument that the anticipation of a condition is an affirmative defense. But the anticipation or contemplation of change does not necessarily preclude a finding that the expected change, when it occurs, is nevertheless a substantial

5

and material change of circumstances.[1]  We consider the anticipation or contemplation of a change as a possible factor in whether the change of circumstances meets the statutory threshold of materiality and substantiality.

The record in this case supports a conclusion that the signing of the MSA[2] created such an expectation that the parents' rights would be terminated that the actual termination did not

[1]  The Department cites an unpublished case from the Tyler court of appeals for the following proposition:  "If a circumstance was contemplated at the time of an original agreement, its eventuality is not a changed circumstance, but instead an anticipated circumstance that cannot be evidence of a material or substantial change of circumstances." *In re M.A.F.*, No. 12-08-00231-CV, 2010 WL 2178541, at *3 (Tex. App.—Tyler May 28, 2010, no pet.) (mem. op., not designated for publication).  That case cites an unpublished opinion from this Court, but we believe the quoted excerpt of the *M.A.F.* opinion, as cited, overstates the breadth of this Court's holding in *Hoffman v. Hoffman*, No. 03-03-00062-CV, 2003 WL 22669032, at *6 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op.).  In *Hoffman*, the custody decree allowed the mother the right to establish the children's residence and limited her right to move outside of the specified Texas counties for three years.  When the mother made plans to move to Pennsylvania after the three years expired, the father moved to modify the custody decree by extending the relocation limitation.  This Court wrote:

> We begin by noting that, because the move to Pennsylvania was contemplated at the time of the original agreement, its eventuality was not a changed circumstance but an anticipated circumstance and addressed in the original agreement.  As a result, the move itself cannot be evidence of a material or substantial change in this case.

*Id.*  This Court's holding in *Hoffman* is tied to its facts and should not be read to mean that an anticipated change can *never* be the basis of a finding of material and substantial change of circumstances when the change actually occurs.  For example, we typically anticipate that the child's age will change, and this Court has approved the holding that a change in the child's age can, in conjunction with other circumstances, constitute a material change.  *See Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied).  We conclude that *Hoffman* means only that a change *can* be so anticipated and factored into the decree that the realization of the change does not constitute a material and substantial change of circumstances under the statute. 2003 WL 22669032, at *6.

[2]  The MSA included Victoria's and Joshua's agreement to execute affidavits of relinquishment as grounds for termination of their parental rights and the setting of a hearing to consider other placements for the children.

constitute a substantial change for the children or Kelly. The children's sole managing conservator did not change, their placement did not change, and Kelly's rights of access did not change—nor is there any evidence that they changed by the time of the hearing. While the termination of parental rights clearly can be a substantial and material change of circumstances for children or grandparents, appellant has not shown that the jury's failure to find a sufficient change in these specific individuals' circumstances is against the great weight and preponderance of the evidence in this case.

Similarly, appellant has not shown error in the jury's finding that the termination of John's rights did not constitute a substantial and material change in relevant circumstances. John presents a somewhat different fact pattern because he did not participate in the mediation or sign the MSA. Its preparation, therefore, did not necessarily set up an expectation regarding his rights except indirectly when he was not listed among the potential placements. There is no evidence that his lack of involvement changed between the signing of the MSA and the modification hearing. John's lack of involvement in the MSA process was consistent with his lack of involvement with his child that persuaded the court to terminate his rights for constructive abandonment. Kelly has not shown that the jury's finding of insufficient change in his or the children's circumstances prompted by John's termination was erroneous.

Kelly contends that the jury should have found sufficiently changed circumstances prompted by litigation-related events. The filing and striking of Kelly's intervention in the termination proceeding was essentially no change in the litigation or anyone's circumstances. While the home study's recommendation may have improved Kelly's chance to change the children's conservator, it was not binding, and the Department and CASA both rejected the report's recommendation. It was a collation of observations and a recommendation regarding circumstances,

7

but Kelly has not shown that the great weight and preponderance of the evidence shows that the report itself was a substantial and material change in Kelly's or the children's circumstances. Similarly, there is no evidence that the February reaffirmation of the placement with the foster parents marked a sufficient change: it did not move the children, provide for their adoption, or alter Kelly's circumstances beyond considering and rejecting him as the placement.

Kelly also has not shown error in the jury's finding that his filing for divorce did not provide the necessary degree of change. Kelly had been separated from his wife for several years and, though the filing was a step toward enabling him to adopt the children, the divorce proceeding remained stalled in September 2011 due to disputes over his pension. Merely filing for divorce did not change his or the children's living arrangements, their financial situation, or his ability to adopt the children. Finally, while the CPS witness may in the placement hearing have given ambiguous testimony regarding whether Kelly had a felony conviction, she testified that the report was silent on whether his reported 1984 assault was "a misdemeanor, a felony, or dismissed." There is no showing that the trial court was actually misled at the placement hearing or that the potentially misleading testimony had any effect on the court's decision. More to the point, Kelly has not shown that the great weight and preponderance of the evidence is against the finding that the clarification of the possibly ambiguous testimony constituted no substantial or material change in the children's or Kelly's circumstances.

Evidence that the children exhibited behavioral problems after the MSA was signed is balanced by the evidence that they exhibited behavioral issues well before the MSA was signed. Kelly points to the children's therapist's testimony that the older child was reportedly biting herself in March 2011 and that, in May 2011, the second-oldest child reportedly threatened to kill herself

8

when she was reprimanded for getting angry at the younger children. The therapist testified that both of these incidents might have had something to do with anxiety from not being told what was happening with their mother's attempts to regain custody. He also testified that the children had been in therapy since early 2010 and that the older two children were working to control their aggression. The therapist further testified that the oldest child had difficulty handling her anger. He also testified that both children had improved over time. Kelly has not shown that these biting and self-threatening incidents in 2011 mean that the the jury's verdict is against the great weight and preponderance of the evidence.

Kelly's strongest argument that sufficient change occurred concerns the reduction in visitation following the execution of the MSA. Before the MSA was signed, Kelly had no independent right to visit the children, but he supervised their visits with Victoria and was often present during their weekends with Rhonda. When the court announced that parental rights were terminated in February 2011, CASA and the Department determined that continued visitation with Kelly might confuse the children. Because the children did not know their parents' rights had been terminated until September, the change the children experienced was that their grandfather did not visit them for four consecutive months. The visits resumed in July 2011 when, after a court-ordered assessment, the children's therapist determined that further study of actual visits would be useful in deciding whether the children and their grandfather should have future visits. The therapist testified that the shotgun blast through Kelly's front door increased his concern about the suitability of the environment at Kelly's home. The children met with their grandfather one time each in August and September at the Department's office before the September 2011 hearing, so his visitation was restored to the frequency it had been in January 2011.

9

The question before the jury was whether the March-to-June stoppage of visits between Kelly and the children constituted a substantial and material change in Kelly's or the children's circumstances. Kelly testified that he believed he would not be allowed to visit the children after adoption, but we cannot conclude that the gap in visits plus his heightened awareness of his rights requires reversal. Irrespective of the gap, Kelly had the same right to visit the children at the time the MSA was signed and the time of the September hearing. He has not shown that the great weight and preponderance of evidence is against a finding of no substantial change in his or the children's circumstances based on the facts that his visit schedule and his rights to visit were the same at the time of the modification hearing as it had been at the time the MSA was signed.

We conclude that Kelly has not shown that the great weight and preponderance of the evidence is against the jury's finding that no substantial and material change occurred in his or the children's circumstances regarding the issues he raises, whether they are considered individually or collectively. We affirm the judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: November 9, 2012

10